Kane, Appellant, v. Schuylkill Fire Insurance Company (No. 2).

*Contract—Construction of instrument by parties.*

Cotemporary construction of a contract by acts of the parties is entitled to very great weight, but it ought to appear with reasonable certainty that they were acts of both parties done with knowledge, and in view of a purpose at least consistent with that to which they are subsequently sought to be applied.

Where a general manager of an insurance company under his contract with the company receives as his compensation a percentage on the gross premiums paying thereout "all the expenses of the company," the manager is bound to pay the taxes, and the fact that in his own books he charged the taxes against the company is immaterial, if there was no ratification or knowledge on the part of the company of such entries.

Argued Jan. 8, 1901,    Appeal, No. 177, Jan. T., 1900, by plaintiff, from decree of C. P. No. 1, Phila. Co., June T., 1897, No. 1326, on bill in equity in case of William Kane v. Schuylkill Fire Insurance Company.    Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ.    Affirmed.

Bill in equity for an account and discovery.

See Kane v. Schuylkill Fire Insurance Company (No. 1), ante, p. 198.

Before the referee it was claimed that the taxes on the Schuylkill Fire Insurance Company should not be included in the expenses which plaintiff was obliged to pay under his contract of employment. It appeared that it was the plaintiff's practice to charge the taxes against the company, and not as expenses. On this subject the referee reported as follows:

It appeared from Mr. Balfour's cross-examination that he, as treasurer of the company, was the only person who drew or could draw checks upon the deposit account of the company, which was kept in the Quaker City National Bank, and that the checks showed on their faces the purposes for which they were drawn, as for fire losses, taxes, etc. A number of sample checks were produced before the referee. It was argued from this that as Balfour knew that the checks were drawn to pay taxes from the bank account of the company, he must have known that Kane was not paying the taxes as he did other "expenses of the company, and that, therefore, he must have known and acquiesced in Kane's practice of charging these taxes against the company. The argument does not, however, convince the referee. Mr. Balfour's practice in thus signing checks is not inconsistent with his belief and expectation that the amounts would be charged in the books against Kane's commissions.

Up to April, 1897, the relations of the parties were entirely friendly; no cause of difference had developed; Mr. Balfour reposed entire confidence in Kane, and left all the details of the business to him. Neither party seemed to have any thought that any difference of opinion existed between them.

The referee has concluded, as matter of law, that the words "all expenses " in this contract, includes the annual taxes paid by the company, and is further of opinion that the evidence of a usage or custom contrary thereto, or of any waiver of a right arising by virtue of that contract, must be sufficiently clear and distinct to enable the referee to find something equivalent to a new agreement upon the subject. Such is not the case here, and the referee accordingly is of the opinion, and so concludes, that the legal effect of the contract between the parties was not varied by any contrary usage, custom or waiver.

Exceptions to the referee's report were dismissed by the court.

*Error assigned* was in dismissing exceptions to referee's report.

*John G. Johnson,* with him *H. Gordon McCouch,* for appellant, cited: Peoples' Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22; Lehigh Coal & Navigation Co. v. Harlan, 27 Pa. 439.

*Arthur E. Weil* and *Edward H. Weil,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1901:

We are not satisfied that the referee erred in finding that the defendant company was not bound by knowledge of the entries in the books as to the taxes. The circumstances were peculiar. Everything was in the hands of the plaintiff. As to real ownership, Balfour was the company, but as to management the plaintiff was the company. The books though nominally the books of the company were in fact his books, kept by his employees under his orders and supervision. The entries therefore were evidence against him, but only in a limited and qualified way evidence for him. Clark, though the secretary of the company, was a mere figurehead wholly under the domination and control of plaintiff who put him in his position, paid his salary and gave him his orders. In regard to this very subject of the charge of the taxes against the company, Clark testified that Balfour told him counsel had advised that such charge was wrong and asked, " What do you think about it? I said I was hardly capable of judging. . . . I told him it would be a matter for him to see Mr. Kane about." This is not the language of an officer of the company taking care of its interests, but of an employee taking orders from Kane as his employer.

Cotemporary construction of a contract by acts of the parties is entitled to very great weight, but it ought to appear with reasonable certainty that they were acts of both parties, done with knowledge, and in view of a purpose at least consistent with that to which they are now sought to be applied. In the present case there was no ratification shown or even knowledge of the entries as to taxes, which was sufficient to establish a

construction by the parties.    The claim rests on inference from the entries in the books which, as already said, were in fact the books of plaintiff.

On the meaning of the words, " all expenses of the company " as used by the parties, we entertain no doubt.    The effect of the contract was that plaintiff was to run the entire business as sole manager, was to take twenty per cent of the gross premiums received, pay the expenses and keep the balance saved as his compensation.    The expenses meant everything paid out in the course of the business for the purposes of running it, all costs, outlays and charges incident to its maintenance and prosecution.

Prima facie everything which the company would have had to pay out in the prosecution of the business in the ordinary way, was a part of the " expenses of the company " which by his contract the plaintiff assumed.    Taxes were a part of such expenses due annually as part of the price of doing the business, just as a license fee would be in the case of auctioneers or dealers within the license tax statutes.    The parties in their contract made certain specified exceptions, and thereby excluded all others.

Appeal dismissed at costs of appellant.