## Sternbergh, Appellant, v. Brock.

*Corporations—Stock—Preferred stock—Dividends.*

1. Where, in a contract for the creation of preferred stock, there is no stipulation to the contrary, the weight of authority clearly favors the right of preferred stockholders to share with the common stockholders in all profits distributed, after the latter have received an amount equal to the stipulated dividend on the preferred stock.

2. Where a resolution authorizing the issue of preferred stock of a corporation provides that such stock shall be entitled "to receive a cumulative yearly dividend of five per cent in each year before any dividends shall be set apart or paid on the common stock," such stock after it has received its preference in dividends and after the common stock has received an equal amount as dividend, is entitled to participate with the common stock in the distribution of the remaining profits, if any.

3. In such a case the fact that for a series of years the preferred stockholders were paid without objection on their part only five per cent per annum, and the entire balance of profits was paid to the common stockholders, is not to be considered in determining the rights of the parties, if it appears that while the dividend paid to the common stock was much more than five per cent on the amount paid in, it was much less than five per cent on the par value of the stock.

4. Cotemporary construction of a contract by acts of the parties is entitled to very great weight, but it ought to appear with reasonable certainty that they were acts of both parties, done with knowledge, and in view of a purpose at least consistent with that to which they are now sought to be applied.

5. If a contract is ambiguous in meaning, the practical construction put upon it by the parties thereto is of great weight, even though the contract is in writing, and ordinarily is controlling. The practical interpretation of the parties is to be regarded, however, only when the contract is ambiguous. If clear and free from ambiguity, the intention shown upon its face, if written, must be followed, though contrary to the practical interpretation of the parties, and even if such practical construction has been acquiesced in for a long period of time.

Argued March 26, 1909. Appeal, No. 11, Jan. T., 1909, by plaintiffs, from decree of C. P. No. 4, Phila. Co., March T., 1907, No. 1,624, dismissing bill in equity in case of J. H. Sternbergh et al. v. Arthur Brock et al., directors, and H. M. Richards, treasurer of the American Iron & Steel Manufac-

turing Company and the said American Iron & Steel Manu-
facturing Company. Before MITCHELL, C. J., FELL, MESTRE-
ZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before AUDENRIED, J.
The facts are set forth in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Cyrus G. Derr* and *D. T. Watson*, for appellants.—The terms
and conditions of issuance of the $3,000,000 of preferred stock
of the American Iron & Steel Manufacturing Company must,
under the pertinent circumstances appearing in the cause, be
construed to entitle the holders of such preferred stock to re-
ceive cumulative yearly dividends of five per centum, payable
quarterly, before any dividend shall be set apart or paid on
the common stock and as not giving the holders of the said
preferred stock any right to participate in the profits of the
said company beyond the said dividend of five per centum
per annum: R. R. Co. v. Jackson, 77 Pa. 321; Fidelity Trust
Co. v. Lehigh Valley R. R. Co., 215 Pa. 610; Bridgewater
Navigation Co., L. R. 39 Ch. Div. 1; Chicago Ry. Co. v.
Northern Pacific Ry. Co., 101 Fed. Repr. 792; Heller v. Nat.
Marine Bank, 89 Md. 602 (43 Atl. Repr. 800); Burt v. Rattle,
31 Ohio, 116.

Practically it is true that the investing public assume and
understand that preferred stock is never entitled to more
than its specified and fixed dividends, even though the certif-
icate is silent as to further dividends in case a higher dividend
is paid on the common stock: Hare v. Horton, 27 Eng. Com.
Law Rep. 160; Scott v. B. & O. R. R. Co., 49 Atl. Repr. 327.

The construction placed upon the terms and conditions of
issuance of the said $3,000,000 of preferred stock by the board
of directors of the said company and acquiesced in by all the
shareholders, preferred and common, namely, that the holders
of the said preferred stock should not participate in any divi-
sion of profits by the corporation beyond the dividend of five
per centum per annum expressly stipulated for, must, under
the pertinent circumstances appearing in this case, be adopted,

adhered to, and enforced by the court: Ringrose v. Ringrose, 170 Pa. 593; Berridge v. Glassey, 112 Pa. 442; People's Nat. Gas Co. v. Wire Co., 155 Pa. 22 (25 Atl. Repr. 749); Nickerson v. Atchison, etc., Co., 17 Fed. Repr. 409; Lyon v. Motley, 30 N. Y. Sup. 218.

Persons who have become members of the American Iron & Steel Manufacturing Company by stock purchase since the adoption by the board of directors and the stockholders of the construction that the rights of the preferred stockholders with respect to dividends are limited to a dividend of five per centum per annum are bound by such construction, and no rights possessed by them require or warrant any deviation therefrom: Erny v. Schmidt Co., 197 Pa. 475; Church v. R. R. Co., 78 Fed. Repr. 526.

*John G. Johnson,* for appellees.—The rule as laid down generally, as well as in Pennsylvania, in the case of preferred shares of stock, is, that in the absence of an expressed intention to the contrary, the holder, after the payment to the common shares of a percentage equal to that paid to him, is entitled to participate pro rata in further dividends: Fidelity Trust Co. v. Lehigh Valley R. R. Co., 215 Pa. 610.

The corporation would not be bound by any understanding antecedent to that adopted at or after its formation: Bailey v. R. R., 84 U. S. 96; Bridgewater Nav. Co., L. R. 39 Ch. Div. 1.

OPINION BY MR. JUSTICE POTTER, June 22, 1909:

On July 7, 1899, four manufacturing concerns, the Pennsylvania Bolt and Nut Company, J. H. Sternbergh & Son, the Lebanon Iron Company and the East Lebanon Iron Company, entered into an agreement, by which they were to transfer to a proposed corporation, the whole of their respective "plants, franchises, good-will, business, patents, trademarks and property of every sort and kind." The agreement further provided that they should receive for the property so transferred full paid and nonassessable preferred stock of the proposed corporation, of the par value of $50.00 per share, of which $3,000,000 worth were to be issued and divided among

them in designated proportions. The agreement also provided: "The said preferred stock shall have an accumulative preference of Five Percent (5%) dividend annually, payable quarterly on the first days of January, April, July and October, and the first preference as to the distribution of the assets of the Company; and further none of the property or franchises of the proposed company can be mortgaged without the consent of at least a majority of the preferred stock." Common stock to the extent of $17,000,000 was also to be issued, divided into 340,000 shares, with a par value of $50.00 each upon which $5.00 per share was to be paid in cash.

In pursuance of this agreement the American Iron & Steel Company was incorporated on August 21, 1899, under the laws of Pennsylvania, for the manufacture of iron and steel products. The capital named in the articles of incorporation was twenty shares, with a par value of $1,000, but this was increased, by action of the stockholders on August 23, 1899, to $20,000,000, divided in $3,000,000 of preferred and $17,000,000 of common stock, all of a par value of $50.00 a share.

By resolution adopted at the stockholders' meeting of August 23, 1899, it was provided "that the preferred stock whose issue was thereby authorized to the amount of $3,000,000 should be entitled, (a) 'to receive a cumulative yearly dividend of five per cent, payable quarterly on the first days of January, April, July and October, in each year before any dividends shall be set apart or paid on the common stock; (b) to be paid in full both principal and accrued dividends in the event of liquidation or dissolution of the company before any amount shall be paid to the holders of the common or general stock; (c) to require the consent in writing of a majority of the holders thereof to the creation of any mortgage.' "

The stock was issued as provided for in the agreement and the resolution of the stockholders. On February 27, 1905, the common stock was reduced, after an assessment of $2.50 a share had been levied, to 51,000 shares, of the par value of $2,550,000, making the total capital stock $5,550,000.

From the organization of the company until the year 1907, the holders of preferred stock were paid the stipulated five

per cent annual dividend, and no more, while all profits above the amount so paid were distributed by dividends to the common stockholders. In March, 1907, a quarterly dividend of two per cent was declared by the directors upon all the stock, both preferred and common, which was at the rate of eight per cent per annum.

J. H. Sternbergh, who was a holder of the common stock, filed this bill in equity against the directors and treasurer of the company and the corporation itself, alleging that the preferred stockholders were not entitled to receive more than five per cent per annum on the par value of their stock, and praying the court to enjoin the payment to them of the dividend declared in excess of one-quarter of that amount.

Answers and replication were filed, and the case was tried before AUDENRIED, J., who found that the plaintiffs were not entitled to an injunction and recommended that the bill be dismissed. Exceptions to the findings of the trial judge were dismissed by the court in banc, and a decree made dismissing the bill, with costs. Plaintiffs have appealed, and have assigned for error the dismissal of their exceptions, and the decree dismissing the bill.

Three questions are raised by the arguments of counsel on this appeal.

1. Whether preferred stock issued by a company incorporated under the corporation act of 1874, is limited as to dividends, to the amount of its preference; or whether, after payment of an equal amount as dividend on the common stock it is entitled to participate in the distribution of the remaining profits, if any.

2. Whether under the agreement and resolution in the present case, the preferred stockholders can receive dividends of more than five per cent per annum on the par value of their stock.

3. Whether the alleged fact that for a long series of years the preferred stockholders were paid without objection on their part, only five per cent per annum and the entire balance of profits was paid to the common stockholders, is to be considered in determining the present rights of the parties.

The authority to issue the preferred stock in the present case is derived from the Act of April 29, 1874, sec. 16, P. L. 43, which provides: "Every corporation created under the provisions of this act, or accepting its provisions, may, with the consent of a majority in interest of its stockholders, obtained at a meeting to be called for that purpose, of which public notice shall be given during thirty days in a newspaper of the proper county, issue preferred stock of the corporation, the holders of which preferred stock shall be entitled to receive such dividends thereon as the board of directors of the corporation may prescribe, payable only out of the net earnings of the corporation."

The learned judge of the trial court was of opinion that the present case is ruled by Fidelity Trust Co. v. Lehigh Valley R. R. Co., 215 Pa. 610. It was there said (p. 617): "When each class of stock had been paid ten per cent, they were equal, and equally entitled to partake of whatever remained in the fund applicable for dividend purposes. The preferred stockholders were not creditors."

In West Chester, etc., R. R. Co. v. Jackson, 77 Pa. 321, a loose expression was used, when it was said that "preferred stock is only a form of mortgage." Whatever the extent of the preference in that case may have been, speaking generally, stock, whether it be common or preferred, does not represent indebtedness; its possession means ownership of the company.

The authority under which the preferred stock was issued in Fidelity Trust Co. v. Lehigh Valley R. R. Co., 215 Pa. 610, was contained in the Act of March 4, 1850, P. L. 129, which provided: "And the said additional stock so issued shall be entitled to a preference over all the other stock of the said company in every future dividend of profits which may be declared by the said company, until the holders of such additional stock shall have been paid from the funds applicable to the payment of such dividend, ten per cent per annum on the amount of capital stock of the company represented by said shares of additional stock so held by them respectively; and the holders of the other stock of the company shall not be entitled to participate in any future dividend of the profits

of the company until the holders of said additional stock shall have been paid from the funds applicable to such dividend, ten per cent per annum on the amount of the capital stock of the company represented by said additional shares so held by them respectively." In reply to the same contention which is made here, the court below very appropriately, and as we think convincingly, said: "In attempting to distinguish between the contract in the present case and that considered by the Supreme Court in Fidelity Trust Co. v. Lehigh Valley R. R. Co., much reliance is placed by counsel for the plaintiffs on three peculiarities of expression in the act of 1850. These are, first, the use of words alluding to the preferred stock thereby authorized as representing a definite part of the company's aggregate capital stock; second, the limitation of the preference by the words, 'until the holders of such additional stock shall have been paid ten per cent per annum;' and third, the employment of the word 'participate' as applied to the right of the holders of the common stock to receive dividends from the company's profits. These points of difference are but trifling and constitute no sound distinction between the essential terms of the two contracts under comparison. With respect to the use of the word 'participate,' it is enough to say that it probably refers here to the sharing of the profits of the corporation among the holders of the common shares themselves rather than to the distribution between the two classes of stockholders. The words which serve to limit the preference of the additional shares, viz., 'until the holders of such additional stock shall have been paid ten per cent per annum,' imply nothing different from what is implied by the words 'before any dividend shall be paid or set apart on the common stock' contained in clause (a) of the resolutions of the American Iron and Steel Manufacturing Company, above quoted. The words 'amount of capital stock represented by said additional stock,' in the act of 1850, are devoid of the significance ascribed to them. They are merely a clumsy paraphrase of the expression 'par value' which the draftsman of the act probably regarded as too colloquial a term for use by the legislature.' "

Where there is no stipulation in the contract to the contrary, the weight of authority clearly favors the right of preferred stockholders, to share with the common stockholders, in all profits distributed, after the latter have received an amount equal to the stipulated dividend on the preferred stock.

"In the absence of special provisions, the holders of preferred stock in a corporation are in precisely the same position, both with respect to· the corporation itself and with respect to creditors of the corporation, as the holders of common stock, except only that they are entitled to receive dividends on their shares, to the extent guaranteed or agreed upon, before any dividends can be paid to the holders of common stock:" 2 Clark & Marshall on Priv. Corp. (1901) sec. 417c. "A share of stock is a share of stock, whether preferred or common:" 1 Cook on Corps. sec. 269, note. See also, 1 Elliott on Railroads (2d. ed.), sec. 84; 2 Beach on Priv. Corp. sec. 501.

We do not find anything in the agreement or resolution in the present case which limited the preferred stockholders to a dividend of five per cent per annum upon their stock.

With regard to the contention that the court should follow the construction placed upon the contract, which it is alleged the parties followed for a series of years, that is, by paying to the preferred stockholders only the stipulated five per cent dividends, and awarding the remaining profits to the common stockholders, the trial judge does not find that any such construction was established, and he further finds that, except in the years 1905 and 1906, the dividends paid on the common stock were less than five per cent of its par value. In discussing this feature he says: "Has there grown up any usage in the company at variance with the rights of the preferred stockholders as ascertainable from a fair reading of the resolutions under which the preferred shares were issued? The plaintiffs assert that there is such a custom, and in support of their statement, point to the dividends paid on the common stock during the first sixteen months of the company's existence, which aggregated $1.25 per share on the common stock, a return of more than eighteen per cent per annum on the sum paid in

on this stock, while during the same period the holders of preferred stock accepted without murmur dividends at the yearly rate of five per cent on their shares.  The effect of this evidence is entirely overcome, however, by the consideration that the dividends paid on the common stock yielded less than two per cent on its par value.  It is to be assumed that before the holders of preferred stock could claim more than the five per cent dividends that they received, the holders of the common stock were entitled to receive a dividend of the same percentage on the par value of their shares.  To refuse them this right would be unjust.  True it is that they had paid in only ten per cent of the amount of their subscriptions, and that the company had the use of but a comparatively small part of what they were obligated to pay in if called on, but the company enjoyed the credit of having such a resource as the unpaid subscriptions to its stock, and the common stockholders had at risk in the venture not only what money they had paid in, but all for which they were still liable.  It was proper, therefore, that the par value of their stock should be taken as the basis of their share in the company's profits, and until they received more than five per cent per annum on that basis (which they never did prior to 1905), the holders of preferred stock had no reason to complain."  This conclusion commends itself to us.

With reference to this subject, the present chief justice in Kane v. Ins. Co., 199 Pa. 205, said (p. 207): "Cotemporary construction of a contract by acts of the parties is entitled to very great weight, but it ought to appear with reasonable certainty that they were acts of both parties, done with knowledge, and in view of a purpose at least consistent with that to which they are now sought to be applied."  In our view, these requirements are not met in the present case.  Further, it should be noted, that the rule invoked applies only to contracts that are ambiguous, and where the intention is doubtful.

In 2 Page on Contracts (1905), sec. 1126, the rule is thus stated: "If a contract is ambiguous in meaning, the practical construction put upon it by the parties thereto is of great weight, even though the contract is in writing, and ordinarily

is controlling. . . . The practical interpretation of the parties is to be regarded, however, only when the contract is ambiguous. If clear and free from ambiguity, the intention shown upon its face, if written, must be followed, though contrary to the practical interpretation of the parties, and even if such practical construction has been acquiesced in for a long period of time."

We see no need in the present case, for looking beyond the terms of the contract. We think it was properly construed by the court below. The assignments of error are overruled, and the decree is affirmed. .