Taylor *v.* Mathues et al., Appellants.

Argued October 6, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Albert 'H. Friedman,* and with him *Peter P. Zion,* for appellant.

*Albert Smith Faught* of *Sutton and Faught,* for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1934:

Plaintiff declared upon a written contract of employment for a term of two years with the defendant company, averred performance upon his part, alleged that deductions, aggregating $1,887.31, had been made from the wages due him, and sued for that amount, with interest from an average date.

Defendant filed an affidavit of defense averring that it had paid plaintiff the full amount due him under a proper construction of the contract; the court below made absolute plaintiff's rule for judgment for want of a sufficient affidavit, and defendant now appeals from the summary judgment thus entered.

The material portion of the contract, dated August 25, 1930, reads:

"Sixth: Said party of the first part, (defendant) in consideration of one dollar and other valuable consideration, paid to party of first part by William F. Taylor, 2nd, (plaintiff) the receipt of which is hereby acknowledged, further agrees that it will operate a union Photo Engraving Plant, and employ William F. Taylor, 2nd, in its photo engraving plant, on day work, (assigning him to active work on the camera, or active shop work) at a salary of sixty ($60) dollars per week, payable weekly, (or at such higher compensation as is now or may hereafter be established by the Philadelphia Photo Engravers Union Number 7) for a period of two (2) years from the date of this agreement, the acceptance of said William F. Taylor, 2nd, written hereon and the execution of this agreement by the party of the first part to constitute a binding agree-

ment of employment between party of the first part and said William F. Taylor, 2nd.''

The controversy relates to the construction of the provision fixing plaintiff's compensation. His contention is that the contract meant he was to receive a salary of at least $60 for each week he worked, but if the union established, at any time during its term, a wage scale higher than $60 per week, he would be entitled to receive the wages so established. That contingency did not arise.

Defendant's contention is that the contract should be construed to mean that plaintiff was to be paid, for the hours he actually worked in defendant's union plant, at the union rate of pay as that rate might be established from time to time, either above or below a rate equivalent to $60 per week.

We gather from the pleadings that the union rate in force at the time the contract was made was $1.363 per hour for a 44 hour week—equal to $60 per week—except during the months of June, July, and August, during which period the union rate was $60 per week for a 40 hour working week, as the plant did not run on Saturdays. Upon a number of occasions the union rate fell below that figure. For instance, on December 13, 1930, the hours were cut to 34 per week at the hourly rate of $1.363, but increased to 39 on May 16, 1931; on June 6, 1931, the hours were cut to 30 per week and the rate increased to $1.50 per hour; on October 8, 1931, the rate per hour was reduced to $1.363 and the hours remained the same. Plaintiff was paid each week at the union rate in force during that week. Substantial performance by plaintiff is not disputed and the parties do not differ materially with respect to the practical effect of the application of their respective contentions. As we understand the pleadings, defendant does not deny that if its legal liability was to pay plaintiff a wage of $60 per week, it should have

paid him $1,875 more than he actually received; nor does defendant deny that January 15, 1932, is the average date from which interest should be calculated, if plaintiff is entitled to a judgment.

We may therefore confine our discussion to the questions raised with respect to the proper construction of the contract. It was part of a more extensive contract between the present defendant, a co-partnership, and Independence Photo Engraving Company, a corporation, both doing business in the City of Philadelphia. It is stated in defendant's history of the case that plaintiff had been vice-president and treasurer of the latter company, which seems to have been preparing to retire from business. In the contract were provisions to the effect that the Independence Company would turn over to the Peerless a list of the names of persons, firms, or corporations, who were customers of the Independence, and should receive, as a consideration for so doing, a commission for a fixed term of years on all engraving ordered from Peerless by customers included in the list, and that Peerless would employ several persons, theretofore connected with Independence, including the present plaintiff. His employment was provided for in the above quoted paragraph of the contract, and he executed the agreement as therein contemplated. Defendant states he was a skilled laborer, and, as defendant agreed to operate a union plant, we may assume plaintiff was a member of the union.

The language of the contract seems to be quite clear: "A salary of sixty (60) dollars per week, payable weekly, (or at such higher compensation as is now or may hereafter be established by the Philadelphia Photo Engravers Union Number 7) for a period of two (2) years from the date of this agreement."

Defendant was, evidently, desirous of securing the benefit of plaintiff's knowledge and skill for a period

of at least two years. If it had been mutually agreed that during that period he should be paid nothing more than the wages payable to any other workman engaged in similar work, it would have been easy and natural for the parties to have written into their contract: "At such compensation as is now or may hereafter be established by the Philadelphia Photo Engravers Union Number 7." There is no averment that anything was omitted from the contract through fraud, accident, or mistake; defendant's contention, however, seems to be that the parenthetical clause should be reformed to read: "Or at such higher *or lower* compensation as is now or may hereafter be established" by the union.

In its opinion, written by MacNEILLE, J., the court below said: "We understand by this [provision for compensation] that if the union had fixed a higher compensation plaintiff would be entitled to it, but we cannot interpret it in the sense for which the defendant contends;" we agree with this statement.

A further contention by defendant is that, regardless of the construction a court would naturally place upon the words used in the contract, the parties have, by their actions, placed a construction upon the contract which should be controlling.

It seems to be their contention that the payment by defendant and acceptance by plaintiff of weekly payments, calculated upon the wage scale as it varied from time to time, amounted to an implied modification, in the form of a revision downward, of the provisions of the contract as originally drafted, or, at least, to a binding construction by the parties of those provisions.

In the fifth paragraph of his statement of claim, plaintiff averred that he had not agreed to any modification of the contract; the reply in the affidavit was that the averments of this paragraph were conclusions which required no answer.

Aside from any technicalities of pleading, and from the question of a consideration for the alleged modification, we are not convinced that there is any merit in defendant's contention.

In our opinion, the affidavit does not state facts which would amount to a waiver by plaintiff of the balance now claimed or estop him from proceeding to its collection. A debtor cannot discharge himself of a clear legal liability for a fixed amount by paying a part of it. Mere delay in bringing suit is not evidence of a waiver.

Moreover, the rule of contemporaneous construction by the parties is applicable only to contracts in which there is an ambiguity: Sternbergh v. Brock, 225 Pa. 279, 287, 74 A. 166—a case repeatedly cited and reaffirmed.

We see nothing ambiguous in the provisions of this contract relating to plaintiff's employment and the compensation to be paid for his services. Our conclusion is that the court below was fully justified in holding the affidavit of defense insufficient and entering judgment against the defendant for $1,875, with interest from January 15, 1932.

Judgment affirmed.