**MINNEAPOLIS–MOLINE COMPANY,**
a Corporation,

v.

**The UNITED STATES.**

No. 117–55.

United States Court of Claims.

March 6, 1957.

Loring M. Staples, Minneapolis, Minn., for plaintiff. Faegre & Benson, Minneapolis, Minn., were on the brief.

Francis P. Borden, Jr., College Park, Md., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

Plaintiff seeks payment for ballistic test projectiles furnished the Navy under a contract to manufacture and deliver 270,000 5″/38 HC Projectiles, Mark 49, Model O.

The case is submitted on stipulated facts in three stipulations, two of which are accepted by both parties. Plaintiff has objected to the admission of the second stipulation on the grounds of immateriality, although admitting the accuracy of the facts therein set forth. The stipulated facts are as follows:

Plaintiff, Minneapolis-Moline Company, is now and was at all times mentioned in the petition, a corporation organized and existing under the laws of the State of Minnesota, having its principal office in Hopkins, Minnesota, and owning and operating plants or factories in Hopkins and Minneapolis, Minnesota; Moline, Illinois; and Louisville, Kentucky.

On May 2, 1951, plaintiff entered into a certain contract in writing with the United States of America, known and described and hereinafter referred to as Contract NOrd–11,721. Said contract provided for the manufacture at plaintiff's plant at Louisville, Kentucky, of two hundred seventy thousand (270,000) 5″/38 HC Projectiles, Mark 49, Model O, at a unit price of $12.66. By Supplement 7 to said contract, said unit price was reduced to $12.654. Amendment 8 to said contract redetermined the unit price at this amount

of $12.654. Provision was made in said contract that plaintiff would supply projectiles for ballistic tests by the Navy Department.

In accordance with the terms and conditions of said contract, plaintiff has supplied to the Navy Department 2,655 projectiles for ballistic tests at designated points as requested by the Navy Department between February 18, 1953, and February 18, 1955, and has paid the charges for shipping said projectiles to the points designated without cost to the Government, but the defendant refused and still refuses to pay plaintiff for said test projectiles.

Under date of October 20, 1954, the contracting officer of said contract made his determination and decision that plaintiff was not entitled to be paid or reimbursed for said ballistic test projectiles. Thereafter plaintiff appealed from said decision to the Secretary of the Navy. On June 11, 1954, the Armed Services Board of Contract Appeals, as representative of the Secretary of the Navy, ordered that said appeal be dismissed on the ground that the dispute between the parties concerned only a question of law (ASBCA No. 1961).

If plaintiff is entitled to be paid for said 2,655 test projectiles so supplied, it is entitled to recover the sum of $33,596.37 in this action, together with interest and costs as allowed by law.

Plaintiff entered into the following ordnance contracts with the defendant, acting through the Department of the Navy, Bureau of Ordnance:

NOrd–4761, dated Nov. 9, 1943
NOrd–5924, dated Apr. 13, 1944
NOrd–7770, dated Dec. 15, 1944
NOrd–8450, dated Feb. 24, 1945
NOrd–11,721, dated May 2, 1951

Contracts NOrd–4761 and NOrd–5924 were governed by the provisions of Ordnance Pamphlet No. 382–B (March 1937) where applicable.

Contracts NOrd–7770, NOrd–8450, and NOrd–11,721 were governed by the provisions of Ordnance Specifications No. 1388 (November 30, 1944) where applicable.

All of the above contracts were completed by plaintiff and paid for by defendant.

In all of the above contracts, plaintiff furnished ballistic test projectiles to the defendant.

In none of the above contracts was plaintiff paid for the ballistic test projectiles furnished to the defendant.

In contracts NOrd–4761, NOrd–5924, NOrd–7770 and NOrd–8450, plaintiff made no demands upon defendant for payment for the ballistic test projectiles.

Contract NOrd–11,721 has been completed, and plaintiff made total shipments of 267,704 projectiles on said contract, of which 2,655 were projectiles for ballistic tests.

The issue in this case is whether plaintiff, under its contract with defendant, was required to manufacture, free of charge to the Government, 2,655 projectiles for ballistic tests, or whether the obligation was solely that of paying the costs of delivery.

The Government takes the position that it was under no obligation to pay anything for these shells, that they were both to be manufactured and delivered free of any charge. Plaintiff's contention is that it is entitled to be paid the agreed purchase price for all shells delivered, whether for ballistic tests or for general use. Plaintiff admittedly has paid delivery costs.

The essential part of the clause in controversy is paragraph 2(d) under heading "Notes" of the Contract Schedule and reads as follows:

"The Contractor shall supply projectiles for ballistic test at the point designated without cost to the Government * * *."

Plaintiff points to this and says it means that the contractor will absorb the cost of delivery of test shells to the designated points for testing. The

Government takes the view that paragraph 2(d) means the contractor is required to manufacture free the shells for ballistic tests as well as deliver them to the designated point.

We believe that given its plain and literal meaning and read in context with other pertinent parts of the contract, the defendant's contention is correct for the following reasons:

■ The plain and literal meaning of the clause in dispute is just what it says; i. e., "the contractor shall supply projectiles for ballistic test * * * without cost to the Government." Supply means "to furnish or provide." Webster's New International Dictionary of the English Language, unabridged, 1956. Had the contract meant only that the contractor absorb the cost of delivery, as plaintiff contends, certainly the verb "deliver" would have been substituted for that of "supply." There is no evidence that the parties intended the word "supply" to mean "deliver" or to have any meaning other than its ordinary meaning. In Hotpoint, Inc., v. United States, 117 F. Supp. 572, 574, 127 C.Cl. 402, 406, it was stated:

"It is an elementary canon in interpreting a contract that the court should, where the language of the contract is unambiguous, ascertain and effectuate the intention of the parties as expressed by the language in the contract. In so doing the court should give the terms their usual and ordinary meaning even though the intention of one of the parties may have been different from that expressed."

■ Or, as the rule was expressed in Breese Burners, Inc., v. United States, 121 F.Supp. 530, 536, 128 C. Cl. 649, 659–660:

" * * * But when we come to construe a contract we give to words their ordinary and commonly accepted meaning, unless it is shown that both parties understood that they were used in a different sense."

Plaintiff, as contractor, agreed in item 1 of the contract to manufacture and deliver to the Navy 270,000 projectiles at a unit price of $12.66 per projectile. Item 2 of the contract provided that plaintiff should be paid $57,-250 for special tooling. No other payment was provided for in the contract and simple mathematics reveals that the product of $12.66 times 270,000 add to $57,250 equals the total amount of the contract, $3,475,450, as shown on the face thereof. Paragraph F–4a of the specifications specifies the lot size for presentation and acceptance and clearly excludes the projectile furnished for ballistic test or retest. Paragraph F–4a reads as follows:

"Lot Size—Unless otherwise specified, the projectiles shall be presented for acceptance completely finished, except painting, in lots of the following sizes:

| "Caliber | Lot Size |
|---|---|
| "From 3″ to and including 4″0 | 1000 |
| "Above 4″0 | 500 |

"The lot size shall be *exclusive of test projectiles furnished for ballistic test or retest* (see paragraph F–2c). At the discretion of the Bureau, the size of lots may be increased if a change is justified. Changes of lot size shall not operate to change the number of projectiles, including test projectiles, to be furnished under the contract." [Emphasis supplied.]

Paragraph F–4 provides that "Test projectiles not used shall become the property of the Government." If the Government had to pay for said projectiles, this sentence would be meaningless inasmuch as the Government would already own said projectiles.

Plaintiff points to the proviso in section 5(c) of the general provisions of the contract (finding 13) and says that this implies that if the shells are accepted, the Government pays for the supplies.

We need only to point out that section 5(c) comes under the heading of "Inspection" in the general provisions of the contract. "Inspection" entails many steps before final acceptance such as materials, workmanship, chemical composition, gauging, etc. This provision read together with the entire contract could only apply to tests other than ballistic tests and would not alter the meaning of the clause in dispute.

Therefore, the language of the disputed clause is clear and unambiguous, and given the usual and ordinary meaning could only mean that plaintiff was to bear the cost of manufacture and delivery of the shells used for ballistic tests.

Furthermore, assuming *arguendo* that the contract was ambiguous, the meaning affixed by the defendant to the disputed clause was known and consented to by plaintiff. On four prior occasions the parties operated under the clause now disputed, and on each occasion plaintiff accepted payment under the meaning ascribed by defendant.

In Sternbergh v. Brock, 225 Pa. 279, 74 A. 166, 169, 24 L.R.A.,N.S., 1078, the court stated:

" * * * Cotemporary construction of a contract by acts of the parties is entitled to very great weight, but it ought to appear with reasonable certainty that they were acts of both parties, done with knowledge, and in view of a purpose at least consistent with that to which they are now sought to be applied."

A previous contract already performed and already interpreted is strong evidence of the parties interpretation of the disputed contract. However, we see no need in the present case for looking beyond the terms of the contract.

Plaintiff's petition is dismissed.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.

Findings of Fact

The court, having considered the facts as stipulated by the parties, and the briefs and argument of counsel, makes findings of fact as follows:

1. Plaintiff, Minneapolis-Moline Company, is now and was at all times mentioned in the petition, a corporation organized and existing under the laws of the State of Minnesota, having its principal office in Hopkins, Minnesota, and owning and operating plants or factories in Hopkins and Minneapolis, Minnesota; Moline, Illinois; and Louisville, Kentucky.

2. On May 2, 1951, plaintiff entered into a certain contract in writing with the United States of America, known and described and hereinafter referred to as Contract NOrd–11,721. Said contract provided for the manufacture at plaintiff's plant at Louisville, Kentucky, of two hundred seventy thousand (270,-000) 5"/38 HC Projectiles, Mark 49, Model O, at a unit price of $12.66. By Supplement 7 to said contract, said unit price was reduced to $12.654. Amendment 8 to said contract redetermined the unit price at this amount of $12.654. Provision was made in said contract that plaintiff would supply projectiles for ballistic tests by the Navy Department.

3. In accordance with the terms and conditions of said contract, plaintiff has supplied to the Navy Department 2,-655 projectiles for ballistic tests at designated points as requested by the Navy Department between February 18, 1953, and February 18, 1955, and has paid the charges for shipping said projectiles to the points designated without cost to the Government, but the defendant refused and still refuses to pay plaintiff for said test projectiles.

4. Under date of October 20, 1954, the contracting officer of said contract made his determination and decision that plaintiff was not entitled to be paid or reimbursed for said ballistic test projectiles. Thereafter plaintiff appealed from said decision to the

Secretary of the Navy. On June 11, 1954, the Armed Services Board of Contract Appeals, as representative of the Secretary of the Navy, ordered that said appeal be dismissed on the ground that the dispute between the parties concerned only a question of law. (AS BCA No. 1961)

5. If plaintiff is entitled to be paid for said 2,655 test projectiles so supplied, it is entitled to recover the sum of $33,596.37 in this action, together with interest and costs as allowed by law.

6. Plaintiff entered into the following ordnance contracts with the defendant, acting through the Department of the Navy, Bureau of Ordnance:

NOrd–4761, dated Nov. 9, 1943
NOrd–5924, dated Apr. 13, 1944
NOrd–7770, dated Dec. 15, 1944
NOrd–8450, dated Feb. 24, 1945
NOrd–11,721, dated May 2, 1951

7. Contracts NOrd–4761 and NOrd–5924 were governed by the provisions of Ordnance Pamphlet No. 382–B (March 1937) where applicable.

8. Contracts NOrd–7770, NOrd–8450, and NOrd–11,721 were governed by the provisions of Ordnance Specifications No. 1388 (November 30, 1944) where applicable.

9. All of the above contracts were completed by plaintiff and paid for by defendant.

10. In all of the above contracts, plaintiff furnished ballistic test projectiles to the defendant.

11. In none of the above contracts was plaintiff paid for the ballistic test projectiles furnished to the defendant.

12. In contracts NOrd–4761, NOrd–5924, NOrd–7770 and NOrd–8450, plaintiff made no demands upon defendant for payment for the ballistic test projectiles.

13. The pertinent provisions of the contract and specifications are as follows:

"2(d). The Contractor shall supply projectiles for ballistic test at the point designated without cost to the Government. * * *.

" * * * * * *

"5(c). * * * *Provided,* That in case of rejection the Government shall not be liable for any reduction in value of samples used in connection with such inspection or test. All inspections and tests by the Government shall be performed in such a manner as not to unduly delay the work. The Government reserves the right to charge to the Contractor any additional cost of Government inspection and test when supplies are not ready at the time such inspection and test is requested by the Contractor. Final acceptance or rejection of the supplies shall be made as promptly as practicable after delivery, except as otherwise provided in this contract; but failure to inspect and accept or reject supplies shall neither relieve the Contractor from responsibility for such supplies as are not in accordance with the contract requirements nor impose liability on the Government therefor.

" * * * * * *

"F–4. * * * Test projectiles not used shall become the property of the Government.

"F–4a. Lot Size—Unless otherwise specified, the projectiles shall be presented for acceptance completely finished, except painting, in lots of the following sizes:

| "Caliber | Lot Size |
|---|---|
| "From 3" to and including 4"0 | 1,000 |
| "Above 4"0 | 500 |

"The lot size shall be *exclusive of test projectiles furnished for ballistic test or retest* (see paragraph F–2c). At the discretion of the Bureau, the size of lots may be increased if a change is justified. Changes of lot size shall not operate to change the number of projectiles, including test projec-

tiles, to be furnished under the contract." [Emphasis supplied.]

14. Contract NOrd–11,721 has been completed, and plaintiff made total shipments of 267,704 projectiles on said contract, of which 2,655 were projectiles for ballistic tests.

### Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.