PETERS, et vir *v.* BUTLER, et al.

[No. 159, September Term, 1968,]
*Decided April 1, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, SINGLEY and SMITH, JJ.

*William P. Helm,* with whom was *George H. Eggers* on the brief, for appellants.

*Francis X. Quinn,* with whom was *James J. Couch, Jr.,* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

A woman injured in an accident and her husband asked an equity court to reform a general release to all mankind given to one joint tortfeasor on the ground that it did not reflect the intention of the parties, and to make it into a release which would permit the releasors to sue a second tortfeasor in accordance with the provisions of the Uniform Contribution Among Tortfeasors Act, Code (1968 Repl. Vol.), Art. 50, §§ 16 to 24. Judge Bowie found the evidence to disclose no mistake of any kind and dismissed the bill. We find nothing to indicate that he was wrong.

Geneva Peters, whose husband James was the maintenance man of Kirkwood Apartments—Section D, was standing behind a low brick wall on the apartment house grounds, which marked the boundary of a parking lot, when James's new car, driven by Loretta Butler, the Peterses' daughter, ran into the wall and caused it to collapse on Geneva's leg, severely and permanently injuring her.

Eighteen days later the Peterses retained a lawyer experienced, competent and successful in the field of negligence, who

is not their lawyer on this appeal. They say they told him they wished to sue Kirkwood. For a number of reasons he found this inadvisable and they sued only Loretta Butler. Several years later, just prior to trial, the case was settled for $55,000. The bumptious automobile was insured by Nationwide Mutual Insurance Company up to $15,000 and Loretta Butler was insured by American Mutual Insurance Company of Boston up to $50,-000. American paid $40,000 and Nationwide $15,000 to settle the case. The Peterses gave Loretta Butler a release which fully released not only her but "all other persons, firms or corporations liable or who might be claimed to be liable * * * on account of all injuries, known and unknown * * * which have resulted or may in the future develop" from the accident. The release added specifically that it was executed "for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

After the settlement the Peterses retained another lawyer and sued Kirkwood, which pleaded the release and asked for summary judgment. The Peterses thereupon filed a bill to reform the release, alleging in pertinent part that if the provisions of the release serve to release Kirkwood they "do not reflect the intentions of the parties" and that "it was the intention of the parties * * * to have the Release conform to the provisions of Art. 50, Sections 16-24 * * * so as to preserve their cause of action against Kirkwood," the settlement of $55,000 having been intended to be a partial settlement only.

Appellants argue a point which does not appear to have been presented or directly decided below—that properly construed the release does not release Kirkwood. It is understandable that it was not argued below and puzzling that it is argued here, for the very basis of the proceeding to reform the release was that it did bar a suit by the Peterses against Kirkwood. The question would not seem to be properly presented to us for decision under Maryland Rules, but in any event the contention has no merit. Appellants' argument is this: Butler and Kirkwood were joint tortfeasors, under § 19 of Art. 50 of the Code, a release by the injured person of one joint tortfeasor "does not release the other tortfeasors unless the release so provides," and since Kirkwood paid nothing for the release and is not expressly named

10

therein it was not released. We very recently rejected this same contention in *Pemrock Inc. v. Essco Co., Inc.,* 252 Md. 374, 249 A. 2d 711, in which we held that a general release to all mankind barred further suits against other entities involved in the occurrence which produced the settlement with one participant that led to the release. Relied on were various cases holding a release of "all other persons" did release a joint tortfeasor, including *Thomas v. Erie Ins. Exchange,* 229 Md. 332; *Panichella v. Pennsylvania Railroad Company* (3rd Cir.), 268 F. 2d 72, *cert denied* 361 U. S. 932, 4 L.Ed.2d 353; *Oxford Commercial Corporation v. Landau* (N. Y.), 239 N.Y.S.2d 865, 190 N.E.2d 230; and *Canillas v. Joseph H. Carter, Inc.* (S.D.N.Y.), 280 F. Supp. 48, of which we said this:

> "Judge Bryan in discussing the three rules as to joint tortfeasors—the common law rule that a release to one releases all others, the Restatement rule that a release to one releases all unless there is a reservation of right and the Uniform rule that the release of one does not release others liable unless the release so provides—, said of the *Panichella* release:
>
>> 'There, the release * * * expressly provided for the discharge of all other persons, firms or corporations from liability, and thus was a bar under any of the three rules which have been mentioned.' [280 F. Supp. at 53]" [249 A. 2d at 716]

In *Hodges v. United States Fidelity and Guaranty Co.,* 91 A. 2d 473, the Municipal Court of Appeals for the District of Columbia held that under the Uniform Contribution Among Tortfeasors Act of Maryland a release by an injured person of a joint tortfeasor operates by the use of the releasing phrase "all other persons, firms and corporations" to discharge other tortfeasors although they are not named.

Judge Bowie heard the testimony of the lawyer for the Peterses who had settled the case, of his investigator who took the release to the Peterses to be signed, of Geneva Peters, and of the lawyers and claim managers of Nationwide and American respectively. He correctly stated that he who would set aside a written contractual instrument must go beyond offering a pre-

ponderance of proof and meet the stringent requirement of producing evidence that is clear, precise and convincing to the point of reasonable indubitability. *Gingell v. Backus,* 246 Md. 83; *Gue v. Mitchell,* 240 Md. 357. He found that the evidence not only did not support the Peterses' contention of mistake (not only mutual as they claimed but not even unilateral) but that the proof was that all the parties intended just what they agreed to in the release. We think he clearly was right.

The Peterses' testimony was that they always intended to sue Kirkwood, that they told their lawyer this and therefore intended to release only Loretta Butler and thought this was what they were doing, particularly because she was the only person the release mentioned by name. Judge Bowie found, as the trier of fact, that this testimony did not describe accurately what really had occurred.

Their lawyer testified that he had determined it was better not to claim against or sue Kirkwood for a number of reasons. A mother was suing a daughter, which he said "raises problems" and there was also the matter of the father's control of the car the daughter was driving. The lawyer felt that suing Kirkwood would weaken the entire case because even if passive negligence of Kirkwood could be proven, there was

> "the question of proximate cause, even if they were negligent; third, the question of intervening cause, namely, that the driver actually struck the wall. The wall was not constructed for the purpose of keeping traffic from going against the wall. And, fourthly, Mr. Peters at the time was the maintenance man of the Parkside [sic] Apartments, and his knowledge of the weakness of the wall, I think, the paramount knowledge which may or may not have been conveyed back to the owners of the apartment house building, and there was a question of foreseeability, because if Mr. Peters did not foresee danger of his wife standing behind the wall at the time his daughter got into the car how could we possibly convince a jury that it was foreseeable to a corporate defendant * * *."

The lawyer said that he did indeed intend to release Loretta

Butler but he further said the language of the release also released everyone else, and then there was the following colloquy:

"The Court:—this being a general release, was it not the usual form of release that you would recommend your clients sign in this type of case?

The Witness: That is correct, sir.

The Court: Realizing that a general release would release any and all persons as well as those specifically named?

The Witness: That is correct."

The insurance company witnesses—whose testimony Judge Bowie described as "frank and honest"—in total effect and substance said they were buying peace and relieving their companies from further trouble and potential expense of additional claims or suits of any kind, that the release was a general release and intended to be a general release, that a general release was customarily used in such a situation unless, occasionally, a joint tortfeasor release is agreed on, and as house counsel for American said: "If there had been any indication, any indication, that my actions in this case were not closing this entire file the case would have been tried, I would not have settled the case." He was asked whether the Peterses' lawyer said anything about a joint tortfeasor release, and his answer was: "No. He understood thoroughly, because he prepared that particular release and sent it to me, and he understood thoroughly I was asking for a general release, and he sent it to me."

The appellants did not come close to meeting their burden of producing clear and convincing evidence of mistake in the execution of the release or of their understanding its meaning and effect.

*Decree affirmed, with costs.*