492 A.2d 1358

**Mary Ann RALKEY**

v.

**MINNESOTA MINING AND MANUFACTURING COMPANY t/a Orthopedic Products, Surgical Products Division/3M.**

**No. 1254, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 6, 1985.

**516**

David M. LaCivita, Landover (Ashcraft & Gerel, Landover, on brief), for appellant.

David F. Albright, Jr., Baltimore (Charles P. Goodell, Jr. and Semmes, Bowen & Semmes, Baltimore, on brief), for appellee, Minnesota, etc.

H. Kenneth Armstrong, Rockville (James L. Kelly, Jr. and Donahue, Ehrmantraut & Montedonico, Chartered, Rockville, on brief), for appellee, Cavanaugh.

Argued before GILBERT, C.J., and ROSALYN B. BELL and KARWACKI, JJ.

ROSALYN B. BELL, Judge.

A patient executed a general release to settle a Health Claims Arbitration case against her physician. We are asked whether this release precludes a subsequent product liability claim against an alleged corporate joint tort-feasor

which was not and could not have been included in that proceeding.[1]

In March 1980, Mary Ann Ralkey (appellant) fractured her toe, and Roland Cavanaugh, M.D., (appellee) applied a cast to the lower part of her leg. The doctor used Scotch-guard casting tape, a product manufactured and sold by Minnesota Mining and Manufacturing Company (3M, appellee). When he later removed the cast, using an electric saw and allegedly following directions supplied by 3M, Cavanaugh cut Ralkey's leg in three places. The injuries left permanent scars and some disability.

■ Ralkey filed a claim in the Health Claims Arbitration Office against Dr. Cavanaugh on May 19, 1981, asserting that he caused her injuries by negligently removing her cast.[2] Prior to arbitration, however, the parties agreed to a settlement of $4,500. Pursuant to receipt of that amount, Ralkey executed a release of the doctor on December 22, 1982.

On February 9, 1983, Ralkey filed an action against 3M in the Circuit Court for Prince George's County, alleging negligence, breach of warranty and product liability. First, 3M filed a general issue plea and then moved for summary judgment claiming that the release served as a bar to Ralkey's suit. On September 16, 1983, the court denied the motion and the case was set for trial before a different judge.[3]

---

1. This case has been presented on the assumption that Dr. Cavanaugh and 3M were joint tort feasors, and they are so treated throughout this opinion.

2. Under Md.Cts. & Jud.Proc.Code Ann., § 3–2A–02 (1976, 1984 Repl. Vol.), initial jurisdiction of a medical malpractice claim lies with the Health Claims Arbitration Office. *See, Schwartz v. Lilly,* 53 Md.App. 318, 452 A.2d 1302 (1982).

3. For clarity, we will refer to the judge at the hearing on September 16, 1983, as the "motion judge" and the subsequent judge as the "trial judge."

In the interim, 3M entered a third-party claim for indemnity or contribution against Dr. Cavanaugh. The doctor sought summary judgment based on the release; the trial judge initially denied this motion, but then granted reconsideration. Before the rehearing, however, 3M again submitted the motion for summary judgment which had been denied in September 1983 by the motion judge. The court granted 3M's motion on August 22, 1984, and Dr. Cavanaugh's summary judgment motion became moot.

Ralkey appeals from this decision on two grounds:

1. The law of the case doctrine precluded the court from granting the motion for summary judgment which a court of coordinate jurisdiction previously denied; and

2. The release did not apply to 3M, but specifically relieved only Dr. Cavanaugh from further liability.

Appellant urges upon us that this is a case of first impression because it is the first time a Maryland court has considered whether a general release in a Health Claims Arbitration case releases all joint tort-feasors who were not and could not be a party in that arbitration case. We agree this jurisdiction has not decided that precise issue, but conclude that it is less of a first than appellant contends. We explain.

## LAW OF THE CASE

The law of the case doctrine generally provides that a "legal rule of decision between the same parties in the same case" controls in subsequent proceedings between them. 21 C.J.S. § 195 at 330 (1940). Typically, a ruling by the trial court remains binding until an appellate court reverses or modifies it. *Id.* at 332.

In *Loveday v. State,* 296 Md. 226, 462 A.2d 58 (1983), the Court of Appeals explicated the doctrine as it exists in Maryland:

"Once this Court has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that

appeal on the then state of the record, as aforesaid, such a ruling becomes the 'law of the case' and is binding on the litigants and courts alike, unless changed or modified after reargument, and neither the questions decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal." *Id.* at 230, 46 A.2d 58.

In effect, the decision which finally disposes of the matter becomes the law of the case in subsequent proceedings. Ordinarily, this refers to an appellate holding, but a trial court ruling also may stand as the law of the case when no appeal is taken from it. *Acting Director, Department of Forests & Parks v. Walker,* 39 Md.App. 298, 302, 385 A.2d 806 (1978), *Aff'd.* 284 Md. 357, 396 A.2d 262 (1979). The doctrine does not apply between courts of coordinate jurisdiction before entry of a final judgment, as indicated by this Court in *Placido v. Citizens Bank and Trust Company,* 38 Md.App. 33, 379 A.2d 773 (1977):

"Trial courts are bound by the decisions of the Court of Appeals, until they may be overruled. Until then they are precedents to be followed and obeyed. There is no decision or statute which requires one *nisi prius* judge to accept as final and conclusive the decisions on the law before trial of another judge or court." *Id.* at 45, 379 A.2d 773, quoting *Insurance Company v. Thrall,* 181 Md. 19, 22–23, 27 A.2d 353 (1942).

In fact, the latter judge has the discretion to consider the matter *de novo* unless otherwise prohibited by a statute or rule.[4] *State v. Frazier,* 298 Md. 422, 449, 470 A.2d 1269

---

**4.** The general principle that a trial court is not bound by the prior ruling in the same case "is inapplicable if a statute or rule reflects a different intent in a particular situation." *State v. Frazier,* 298 Md. at 449, 470 A.2d 1269. *Frazier* involved the postponement of a trial date pursuant to Md.Code Ann. (1971, 1982 Repl.Vol., 1984 Cum.Supp.), Art. 27 § 591 and Md.Rule 746. The Court of Appeals held that the determination by the administrative judge of "good cause" for a delay was binding on the trial court absent an abuse of discretion. *See also Layman v. State,* 14 Md.App. 215, 230, 286 A.2d 559 (1972) (generally, the court may reconsider a prior ruling, but under Md.Rule 729, it is

(1984); *see Driver v. Parke-Davis & Company,* 29 Md.App. 354, 362, 348 A.2d 38 (1975), *cert. denied,* 277 Md. 736 (1976).

 The present case involves whether the law of the case doctrine applies to the denial of a motion for summary judgment. A party may move for summary judgment at any time during a proceeding when it appears that no genuine dispute of a material fact exists. Md.Rule 610;[5] *Myers v. Montgomery Ward & Company, Inc.,* 253 Md. 282, 289–90, 252 A.2d 855 (1969); *Placido,* 38 Md.App. at 41, 379 A.2d 773. The grant of the motion does not constitute entry of a final judgment from which an appeal can be taken, *Felger v. Nichols,* 30 Md.App. 278, 279, 352 A.2d 330 (1976), and the denial of the motion does not preclude resubmission of it at a later point in the proceedings. *Joy v. Anne Arundel County,* 52 Md.App. 653, 660–61, 451 A.2d 1237 (1982), *cert. denied,* 295 Md. 440 (1983); *Placido,* 38 Md.App. at 44–46, 379 A.2d 773; *Mueller v. Payn,* 30 Md.App. 377, 389–90, 352 A.2d 895, *cert. denied,* 277 Md. 739 (1976).

Appellant argues that the trial court could not grant the motion for summary judgment in this case because of the prior denial.

 As discussed above, the law of the case doctrine does not apply to trial court decisions in Maryland unless a statute or rule renders the decision binding or when no appeal is taken from the final judgment. *See Placido, supra; Walker, supra.* While the trial judges may choose to respect a prior ruling in a case, they are not required to

---

bound by a prior ruling to suppress evidence.). Md.Rule 746 was replaced by Rule 4–271 on July 1, 1984, and is substantially unchanged. The provision of Md.Rule 729 at issue in *Layman, supra,* appears in Rule 4–252(g)(2), effective July 1, 1984.

5. Md.Rule 2–501 replaced Rule 610. The new rule as amended is substantially the same as the former rule except that under 2–501 a court may enter summary judgment for less than all the amount requested.

do so. *Placido,* 38 Md.App. at 45, 379 A.2d 773. Furthermore, a denial of a motion for summary judgment does not "finally dispose" of any matter—it merely permits the case to proceed based on the finding that a dispute concerning a material fact exists. The denial neither decides any issues of law nor precludes a subsequent finding that no factual disputes exist. *See Joy, supra; Placido, supra; Mueller, supra.* Thus, we hold that the law of the case doctrine did not require the trial judge to deny appellee 3M's motion for summary judgment.

We next consider whether the court properly granted summary judgment.

### RELEASE OF JOINT TORT–FEASORS

Maryland has adopted the Uniform Contribution Among Tort-Feasors Act (UCATA), which creates a statutory right of contribution among joint tort-feasors. Md.Code Ann., (1957, 1979 Repl.Vol.), Art. 50 § 16. The Act defines "joint tort-feasors" as:

> "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." *Id.*

The provisions concerning release of a tort-feasor appear in Md.Code Ann., Art. 50 §§ 19 and 20, *supra.*

Under the UCATA, the release of one tort-feasor does not automatically discharge the others, but it does reduce the total amount of the claim against those remaining. Md.Code Ann., Art. 50 § 19, *supra.* The amount of this reduction is "the greater of the consideration paid or the amount or proportion agreed upon to reduce the total claim." *Martinez v. Lopez,* 300 Md. 91, 100, 476 A.2d 197 (1984); Md.Code Ann., Art. 50 § 19, *supra.* Furthermore, the discharged tort-feasor remains liable for contribution to the others unless: (1) the release is given before any right of contribution accrues, and (2) the release provides for a reduction of the claim by an amount equal to the released

tort-feasor's pro rata share. Md.Code Ann., Art. 50 § 20, *supra.*[6]

The following language appeared in the release in the present case:

> *"I* hereby release and discharge *ROLAND CAVA- NAUGH, M.D.* his or their successors and assigns, and all other persons, firms or corporations who are or might be liable, from all claims of any kind or character which I have or might have against him or them, and especially because of all damages, losses or injuries to person or property, or both, whether known or unknown and wheth- er developed or undeveloped, resulting or to result from *the incident which* happened on or about *March 28, 1980, and which is the subject matter of the lawsuit filed in the Health Claims Arbitration Office for Maryland, HCA No. 81–166, and styled Mary Ann Ralkey v. Ro- land Cavanaugh, M.D.* and *I* hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which *I* or *my* heirs, executors and adminis- trators may have against him or them by reason of the above mentioned damages, losses or injuries." (The re- lease was on a printed form. The italicized portions were typed in.)

■ The Court of Appeals has held that "a general release to all mankind bar[s] further suits against other entities involved in the occurrence which produced the set- tlement with one participant that led to the release." *Pe- ters v. Butler,* 253 Md. 7, 10, 251 A.2d 600 (1969); *see Pemrock, Inc. v. Essco Company, Inc.,* 252 Md. 374, 382– 84, 249 A.2d 711 (1969). Thus, language releasing "all. other persons, firms and corporations" discharges remain-

---

6. Md.Code Ann., Art. 50 §§ 19 and 20 address slightly different as- pects of releases: (1) § 19 addresses "the effect of a release on the injured person's claim", and (2) § 20 concerns "the effect of a release on the right of unreleased joint tort-feasors to collect contribution." *Martinez v. Lopez,* 300 Md. 91, 100–01, 476 A.2d 197 (1984). The Court of Appeals has found them not to be mutually exclusive. *Id.* at 101, 476 A.2d 197.

ing tort-feasors even though they are not named in the release. *Peters, supra; Pemrock, supra.*

Despite the holdings of *Peters* and *Pemrock, Inc.*, appellant contends that the phrase "and which is the subject matter of the lawsuit filed in the Health Claims Arbitration Office..." sufficiently limited the otherwise general release and, therefore, discharged only appellee Cavanaugh from liability. She explains that the reference to the Health Claims Arbitration Office restricted the effect of the release to parties who could have been brought before the arbitration office. Because appellee 3M was not a health care provider, appellant could not include the corporation in that proceeding; hence, the release applies to only appellee Cavanaugh. In support of her position, appellant points to *Kyte v. McMillion*, 256 Md. 85, 259 A.2d 532 (1969), and *Huff v. Harbaugh*, 49 Md.App. 661, 435 A.2d 108 (1981). Appellee 3M agrees it could not be a party in the arbitration proceeding, but contends that appellee Cavanaugh is not the only party released.

Although we agree that *Kyte* and *Huff* provide the relevant case law on this issue, we conclude that those decisions support appellee's position that the release discharged both the doctor and the corporation. We will discuss these cases individually and then compare each with the present situation.

In *Kyte v. McMillion, supra*, Edna Kyte was injured in an automobile collision. The accident occurred when the driver of the car in which she was a passenger tried to outrun a police car and, ultimately, hit another car; the driver had no license to operate a motor vehicle. Kyte was taken to the hospital for treatment, which included a blood transfusion. One of the nurses replaced the first bag of blood when it was almost empty; the new bag, however, was the wrong blood type. Another nurse noticed the error shortly after and corrected it. Initially, Kyte's only physical reaction to the mistake involved a skin rash; a subsequent blood test, however, revealed that she had suffered

an "irreversible sensitization" which would affect her child-bearing capacity. *Id.* at 88, 259 A.2d 532.

Kyte filed suit against the hospital and the nurse based solely upon the injury resulting from the blood transfusion. The case went to trial and, before the jury reached a verdict, the parties agreed to a settlement. Kyte executed a release of her claim against the nurse and hospital, which stated in pertinent part:

> " 'I ... do hereby release, acquit and discharge the [hospital and nurse] *and their representatives* and any and ALL OTHER PERSONS, FIRMS, PARTNERSHIPS and CORPORATIONS which are or might be claimed to be liable to me/us from all claims and demands of whatever nature, actions and causes of action, damages, costs, loss of service, expenses and compensation on account of or in any way growing out of personal injuries and property damage having already resulted or to result at any time in the future, whether or not they are in the contemplation of the parties at the present time and whether or not they arise following the execution of this release, as the result of and by reason of *treatment rendered to the said EDNA ARLENE KYTE, infant, at UNION MEMORIAL HOSPITAL commencing on January 3, 1967 and thereafter, specifically including but not limited to a transfusion of blood.'*
>
> (A printed form was used in preparing the release. The italicized matter was typewritten into the blank spaces.)"
> *Id.* at 89–91, 259 A.2d 532.

Subsequently, Kyte filed suit against the driver, McMillion, for the injuries sustained in the automobile accident. McMillion defended that, when Kyte released the hospital and nurse from liability, she also effectively released any claim against him.

The Court of Appeals held that the release did not bar the action against McMillion based on the particular facts of the case and stated two reasons for this conclusion. First, the nurse and hospital were subsequent tort-feasors. While the

release of an original tort-feasor discharges subsequent tort-feasors, the Court noted that the converse was not true:

"[A] wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others. [But] it would defy reason to hold the [subsequent tort-feasor] liable for injuries caused by the original wrong doer which were not the consequences of his own carelessness...." *Id.* at 105–06, 259 A.2d 532, quoting *Derby v. Prewitt,* 12 N.Y.2d 100, 236 N.Y.S.2d 953, 957–58, 187 N.E.2d 556, 560–61 (1962).

Second, the Court pointed out that the injuries involved were separate and distinct. The conduct of the hospital and nurse affected Kyte's blood; McMillion's driving resulted in broken bones. Hence, the "tort-feasors did not combine to produce the wrong but only share a common element of liability." *Id.* at 105, 259 A.2d 532, quoting *Derby v. Prewitt, supra.*

*Huff v. Harbaugh, supra,* also involved two wrongdoers. Harbaugh purchased a building and had called Huff to obtain fire insurance. Huff had been Harbaugh's insurance agent for twenty years, and they typically conducted business by telephone; Huff would then mail the insurance policy to Harbaugh. Consistent with this practice, Huff assured Harbaugh that the building was insured and that he would receive the policy soon.

While Harbaugh awaited the arrival of the policy, the building was damaged by a fire that spread from adjoining property and from the negligent demolition of the neighboring property. Harbaugh sued the owner and the contractor who were responsible for the damage and settled the case. The parties executed a release which stated in part:

"5. The Releasors are willing to and hereby do, release the Releasees only for all past or present claims for all damages arising from said occurrence and specifically including those amounts of damage claimed by Releasors for the loss by Releasors of rental income, loss and

damage to the personal property owned by the Releasors in the tavern portion of the building, damage to the concrete sidewalk, repair and relocation of the air conditioning in the tavern portion, the puncturing of the north wall, the time, expense and inconvenience in connection with the processing of the claim, certain items of cost and fees, excluding attorney's fees, in connection therewith, in the total compromised amount of TWENTY FIVE THOUSAND TWO HUNDRED FIFTY DOLLARS ($25,-250.00)."

"6. It is the express understanding therein that Releasors are releasing their claims against the Releasees, only, and this release and compromised amount is not intended to be, nor shall it be construed to be, a release of any insurer, insurance company or insurance agent or broker, for any failure to place or provide insurance coverage for the property, which cause of action, if any, is expressly reserved to the Releasors." *Id.* at 664–65, 435 A.2d 108.

Upon learning that he, in fact, had no fire insurance on the building, Harbaugh sued Huff. In response, Huff claimed that the release of the owner and contractor in the prior action also released him, because he was a joint tort-feasor with them. Huff argued further that a party can recover only once for the same injury, and that Harbaugh had received at least partial compensation from the other tort-feasors. *See id.* at 665, 435 A.2d 108.

This Court disagreed with Huff's contentions. Harbaugh sued the owner and contractor for negligence, but the action against Huff was for breach of promise to secure fire insurance. Rather than bringing separate tort claims, Harbaugh had separate causes of action—one in tort and one in contract. *Id.* at 666–67, 435 A.2d 108. Because of this distinction, there was no joint tort-feasor relationship between Huff and the owner and contractor that would include Huff in the release. *Id.* at 668, 435 A.2d 108.

The case *sub judice* is readily distinguishable from both *Kyte* and *Huff.* In *Kyte,* the injuries were separate and distinct—broken bones and blood sensitization. Each injury also occurred in a different incident—the car accident and the hospital treatment, respectively. Similarly, in *Huff,* plaintiff incurred two injuries arising from one incident— the destruction of his property and the monetary loss due to the lack of fire insurance resulting from the demolition conducted on adjacent property.

In the present case, appellant sustained only one injury during one incident—the cuts on her leg resulted from the removal of the cast. Unlike the wrongdoers in *Kyte* and *Huff,* appellees are joint tort-feasors under the UCATA, in that they are both "liable in tort for the same injury...." We, therefore, turn to the provisions of the release.

Appellant contends that *Kyte* and *Huff* were cases in which general releases were made specific "by reference to the date of a specific occurrence" and by "language limiting the class of releasees to those involved with a certain subject matter while reserving the right to pursue another party involved with a different subject matter." She points out that the material typed into the release in this case also specifies the date of the incident and limits the subject matter of the release. Hence, these clauses are controlling based on the contract rules of construction that

1) specific clauses take precedence over general, and

2) inserted material takes precedence over printed.

These assertions are correct, but they overlook the application of the UCATA by the Court of Appeals in *Kyte* and *Huff,* respectively.

The UCATA focuses on the nature of the claim against several parties, i.e., a tortious injury resulted from actions of two or more persons. Md.Code Ann., Art. 50, § 16, *supra.* Nowhere does the Act distinguish a release executed before or after an administrative proceeding from one involving a judicial proceeding—it simply provides for the effect of a release of one tort-feasor on the claimant's

subsequent action against the remaining tort-feasors. Md. Code Ann., Art. 50 § 19, *supra.*

Similarly, as we discussed above, *Kyte* involved separate injuries (broken bones and blood sensitization), as did *Huff* (negligent demolition of an adjoining building and failure to secure fire insurance). References in the release to the date of the incident or subject matter, therefore, were effective in those situations. In the present case, however, only one incident took place and only one cause of action arose. Merely referring to the date of the incident and the "subject matter" of the arbitration proceeding did not distinguish between the suits against appellee Cavanaugh and appellee 3M, because these items were the same in each case.

Based on our conclusion that the inserted clause in the release did not limit the effect of the release to only appellee Cavanaugh, we must consider the entire release in accordance with general contract rules of construction. *Bernstein v. Kapneck,* 290 Md. 452, 458–60, 430 A.2d 602 (1981); *see Orkin v. Jacobson,* 274 Md. 124, 128–29, 332 A.2d 901 (1975).

The trial court found that the language in the release was plain and unambiguous and that it released the joint tort-feasors. In light of the case law discussed above, as well as our determination that the typed clause did not change the effect of the release, we hold the court did not err in granting summary judgment in favor of appellee 3M. *See, e.g., Bernstein, supra* (plain and unambiguous language of release will be given effect); *Pemrock, Inc.,* 252 Md. at 379–80, 249 A.2d 711 (language of release discharged all "persons, firms, corporations, associations and partnerships" and precluded subsequent suit against a manufacturer and builder). Appellees Cavanaugh and 3M were joint tort-feasors under the UCATA, and the release of appellee Cavanaugh included appellee 3M in its terms. Appellant could have avoided this result simply by striking out the offending language ("all other persons, firms or corpora-

tions"), or by specifically limiting the effect of the release to appellee Cavanaugh. She did not do so. We affirm.

JUDGMENT AFFIRMED.

COSTS TO BE BORNE BY APPELLANT.