551 A.2d 916

**Dean James PANTAZES**

v.

**Michael PANTAZES, et ux.**

**No. 604, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 10, 1989.

Hal C.B. Clagett, III, Upper Marlboro, for appellant.

George Z. Petros (Fisher & Walcek on the brief), Marlow Heights, for appellees.

Argued before BISHOP, ALPERT, and FISCHER, JJ.

BISHOP, Judge.

The appellant, Dean James Pantazes, appeals from a $41,750 judgment entered upon a jury's verdict in the Circuit Court for Prince George's County (Mason, J.), in favor of his brother, Michael Pantazes, and his sister-in-law, Melanie Pantazes. Appellant asks the Court to consider:

I. Whether the appellee's claims for defamation and malicious prosecution were barred by a release which appellee executed pursuant to Md.Ann.Code, Art. 27 § 737 (1987), "Expungement of Police and Court Records."

II. Whether the damages awarded by the jury are duplicitous.

## FACTS

In January 1985 Michael Pantazes (Michael) was contacted by an employee of the Budget Rent–A–Car Company (Budget) who demanded payment for damage which Michael had allegedly inflicted on one of Budget's cars. The employee told Michael that Dean Pantazes (Dean) had informed Budget that Michael was the one who damaged the car. Later, in February 1985, Michael was summonsed by the Sheriff's Department for Prince George's County and served with a statement of charges which alleged that he "did willfully and maliciously destroy, injure and molest the right side of 1985 Lincoln the property of Budget Rent–A–Car." Attached thereto was an "Application for Statement of Charges", signed by one of Budget's employees, alleging that Dean saw Michael scratch the car.

When Michael appeared in the District Court on March 8, 1985, the criminal charges against him were dismissed by the State. Shortly thereafter, Michael filed a "Petition for Expungement of Records" pursuant to Md.Ann.Code, Art. 27 § 737 [1] which included, in accordance with the statute,

---

1. Subsection (c) of § 737 requires that:
    (c) *Time of filing.*— ... (a) ... the petition may not be filed earlier than 3 years after the date the judgment or order was

the following: [2]

### GENERAL WAIVER AND RELEASE

I, Michael Pantazes, hereby release and forever discharge the Montgomery County Police Department, all of its officers, agents and employees and any and all other persons from any and all claims which I may have for wrongful conduct by reason of my arrest, detention or confinement on or about January 23, 1985.

This General Waiver and Release is conditioned on the expungement of the record of my arrest, detention, or confinement and compliance with Section 736(c) of Article 27 of the Annotated Code of Maryland, and shall be void if these conditions are not met.

[Dated] 14 March 1985

[Signed] Michael Pantazes

As a result, and in compliance with Md.Ann.Code, Art. 27 § 737(c) and Md.Rule 4-508, on July 2, 1985, the District Court for Montgomery County ordered the expungement of all police and court records with reference to Michael "pertaining to the arrest, detention or confinement on or about 1/20/85."

On November 14, 1985, following the expungement of records, Michael filed the complaint in the case *sub judice* in which he alleged, *inter alia*, that Dean's statements to Budget were defamatory and that Dean had maliciously caused Michael to be prosecuted for malicious destruction of property. On the third day of the trial, Dean's counsel moved for summary judgment on the ground that the

---

entered or the action was taken which terminated the proceeding. However, ... the three-year waiting period does not apply ... if a person files, with the petition, a written general waiver and release, in proper legal form, of all claims he may have against any person for tortious conduct arising from the charge.

2. The actual form as signed by appellee conforms to Md.Rules Exp. Form 2 (1984). This differs from Md.Rules Form 4-503.2 (1988) only in that the latter form specifically discharges the complainant by name.

Waiver and Release which Michael had signed in the expungement proceeding precluded the tort claims against Dean. The circuit court judge denied the motion because, the court reasoned, Michael had not been subjected to any "arrest, detention, or confinement," and, therefore, the release was of no effect. The court stated that

"[i]f the general release had included the word 'charges', we would have been out of here yesterday morning before twelve o'clock, and I would have been twenty five cents poorer."

At the conclusion of the trial the jury returned a verdict against Dean Pantazes and Michael DeLorenzo (the Budget employee who signed the application for statement of charges) on both the defamation and malicious prosecution counts. By way of a special verdict sheet the jury awarded the following damages:

| | |
|---|---|
| $12,000 | Malicious prosecution by both Defendants |
| 14,000 | Punitive damages for malicious prosecution by Dean |
| 50 | Defamation by Dean |
| 700 | Punitive damages for defamation by Dean |
| 15,000 | Consortium by both defendants |
| $41,750 | |

## I.

### The Release

We discuss separately the effect of the release on the counts for malicious prosecution and for defamation.

### A.

### Malicious Prosecution

In *Pemrock, Inc. v. Essco Co.,* 252 Md. 374, 249 A.2d 711 (1969), the Court held that:

[A] general release to all mankind barred further suits against other entities involved in the occurrence which produced the settlement with one participant that led to the release. Relied on were various cases holding a

release of "all other persons" did release a joint tort-feasor, including *Thomas v. Erie Ins. Exchange,* 229 Md. 332; .... [182 A.2d 823 (1962)]

*Peters v. Butler,* 253 Md. 7, 10, 251 A.2d 600 (1969). "Thus, language releasing 'all other persons, firms and corporations' discharges remaining tort-feasors even though they are not named in the release." *Ralkey v. Minnesota Mining & Mfg. Co.,* 63 Md.App. 515, 525, 492 A.2d 1358 (1985).

It would appear that this general rule would apply to the case *sub judice* so as to release appellant in the action for malicious prosecution. Budget, Dean Pantazes, and the law enforcement officials can all be considered as joint tort feasors [3] in the malicious prosecution. Secondly, the release of "any and all other persons" is the sort of "general release" to which the rule in *Pemrock* has been found applicable. *See Peters v. Butler,* 253 Md. at 10, 251 A.2d 600; *Pemrock, Inc. v. Essco Company, Inc.; Ralkey v. Minnesota Mining & Mfg. Co.,* 63 Md.App. at 524, 492 A.2d 1358. Appellees, however, claim that the rule is not applicable to the release *sub judice.*

█ Appellees, as did the trial court, take the position that although the release that Michael Pantazes signed is a "general release", malicious prosecution is not related to "the occurrence which produced" the release with the State, *Peters,* 253 Md. at 10, 251 A.2d 600; consequently, the parties to the malicious prosecution charge are not affected by the release of March 14, 1985. They contend that the "occurrence which produced the settlement" was a nonexistent "arrest, detention or confinement", as specifically stated in the release, and since none of these events occurred, it could not possibly be related to the occurrence (the malicious prosecution) which is the basis of the present litigation. In other words, appellees contend that the "General Waiver and Release" to the State and "all other per-

---

3. "Joint tort feasors are two or more parties who jointly commit a wrong resulting in a single injury." 3B Personal Injury § 1.03[2] (L. Frumer & M. Friedman ed. 1986).

sons" releases the public from liability for a non-occurrence, for which no one could possibly be liable, in exchange for which Michael Pantazes was granted an early expungement of his records. We do not agree with appellees' understanding that Michael Pantazes made such an "illusory promise," *Stamatiades v. Merit Music*, 210 Md. 597, 614, 124 A.2d 829 (1956) ("[W]here the option reserved to the promisor is unlimited ... his promise becomes illusory and incapable of forming part of a legal obligation." (quoting Williston, Contracts, (Rev.Ed.) Vol. I § 43)).

The flaw in appellees' reasoning is that they treat the signing of the "General Waiver and Release" as if it were part of a criminal proceeding in which they, knowing of a potential ambiguity in the State's position, can remain silent and later capitalize on that ambiguity. For example, consider the trial testimony of the attorney who represented and advised Michael Pantazes at the time of the expungement process:

> I knew from the evidence, and from my investigation, from the paperwork that, to my knowledge, there was no arrest, no detention, or no confinement on the date in question. And thus, there could be no release to anybody including Mr. Dean Pantazes, for having caused the arrest, detention, or confinement, because there was no such cause of action civilly could be based upon that since it never happened.

> . . . . .

> THE COURT: If you don't comply with the statute, you're not entitled to the expungement.
> THE WITNESS: If—that is not the way I read it—if there was a proper objection by the State's Attorney to the form of the release, number one; number two, if the Court sustains the objection by the State's Attorney in the petition for expungement, then in that event, one is not entitled to the release, if the Court rules that way.

In this State, however, releases are normally construed and applied according to the rules of contract law, *Bernstein v.*

*Kapneck*, 290 Md. 452, 458, 430 A.2d 602 (1981); *Parish v. Milk Producers Ass'n*, 250 Md. 24, 101, 242 A.2d 512 (1968); *Ralkey v. Minnesota Mining & Mfg. Co.*, 63 Md.App. at 530, 492 A.2d 1358, not criminal law. There is no reason why this rule should not be applied to the present situation.

The State and Michael Pantazes, in good faith, entered a mutually beneficial, bilateral agreement, *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 593, 128 A. 280 (1925), which was fully supported by adequate consideration on both sides, *Beall v. Beall*, 291 Md. 224, 229, 434 A.2d 1015 (1981); *Broaddus v. First National Bank*, 161 Md. 116, 121–2, 155 A. 309 (1931). Had Michael Pantazes waited the three years required by § 737, which is the period of limitations for civil actions, Md.Cts. & Jud. Proc.Code Ann. 5–101 (1984 & Supp.1988), then, after that time, the State would have been required, § 737, to expunge his records without the release requirement. Where, as here, the petitioner elects to obtain expungement of his records prior to the running of the limitations period, then the predicament is created wherein certain evidence is rendered unavailable [4] by which persons sued might defend themselves in a civil action. For this reason, the State, on its own behalf and for the benefit of all other potential defendants in a civil action, bargained to give up its records in exchange for the general release. Michael Pantazes, on the other hand, bargained for an early expungement in exchange for which he gave up his right to sue.

In light of the understanding that the General Waiver and Release of March 14, 1985, is to be interpreted as a contract, key among the general principles applicable to the interpretation of the agreement is that:

---

**4.** In the case of "court records," Md.Rule 4–502(c), the materials expunged would not actually be destroyed but merely removed to a "denied access area," Md.Rule 4–512(e); however, in the case of "police records," 4–502(h), no specific procedures for retention of expunged records are provided and if a particular police agency does not have a "denied access area" then expunged records must be "obliterated." Md.Rule 4–502(d)(1).

[A] release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation.

*Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 64, 141 A. 434 (1928), *quoted in Wheaton Lanes v. Rinaldi,* 236 Md. 525, 531, 204 A.2d 537 (1964). Furthermore:

The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding...." *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958). "[W]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 328, 301 A.2d 12, 18 (1973); *Little v. First Federated Life,* 267 Md. 1, 6, 296 A.2d 372, 375 (1972); *Devereux v. Berger,* 253 Md. 264, 269, 252 A.2d 469, 471 (1969). Thus, when interpreting [an] ...agreement, this Court is "bound to give effect to the plain meaning of the language used." *Woodham v. Woodham, supra* [235 Md. 356], 360, 201 A.2d [674], 676 [1964]; *Sands v. Sands,* 252 Md. 137, 249 A.2d 187 (1969).

*Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981). Finally:

Where contract language is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids. *Sternbergh v. Brock,* 225 Pa. 279, 74 Atl. 166 (1909); *Kennedy v. Erkman,* 389 Pa. 651, 133 A.2d 550 (1957). Words are to be given their ordinary meaning, *Pines Plaza Bowling, Inc. v. Rossview, Inc.,* 394 Pa. 124, 145 A.2d 672 (1958). However, if the language under consideration is ambiguous or uncertain a court must then determine the intention of the parties. In such a case a court may consider evidence of extrinsic factors: *i.e.,* negotiations of the parties, the circumstances surrounding execution of the contract, the parties' own

construction of the contract and the conduct of the parties. *De–Moss v. Beryllium Corporation,* 358 Pa. 470, 58 A.2d 70 (1948); *Sternbergh v. Brock, supra; Kennedy v. Erkman, supra.*

*Mascaro v. Snelling & Snelling of Baltimore, Inc.,* 250 Md. 215, 219, 243 A.2d 1 (1968). Based on these principles, we now consider the agreement *sub judice.*

First, we reject appellees' argument that, by the express terms of the agreement, *Slice,* 215 Md. at 368, 137 A.2d 687, a formal criminal "arrest",[5] as that word is used in the technical criminal law sense, was a condition precedent to the operation of the release. Our interpretation of the agreement is not to be guided by hypertechnical definitions of the terms, as imposed by the criminal laws, but rather by the ordinary meaning of the words, *Woodham,* 235 Md. at 360, 201 A.2d 674; *Liller v. Logsdon,* 261 Md. 367, 370, 275 A.2d 469 (1971).

Giving effect to the intent of the parties, as expressed in the ordinary meaning of the words in their agreement, is not a simple task. The phrase "arrest, detention or confinement" cannot be accurately defined within the four corners of the agreement. Words like "arrest" and "detention" are vague and their definitions are context dependent. "Arrest" when used in the criminal context describes a more specific and formal act than when that term is used in a civil context. *Compare Morton v. State,* 284 Md. 526, 530, 397 A.2d 1385 (1979) (quoted in note 5) *with Mason v. Wrightson,* 205 Md. 481, 487, 109 A.2d 128 (1954) (Any exercise of force, or threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment.), the definition of "arrest" also varies within the criminal context, *compare*

---

**5.** A criminal arrest consists of "the taking, seizing or detaining of the person of another, *inter alia,* by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest." *Morton v. State,* 284 Md. 526, 530, 397 A.2d 1385 (1979).

*Morton,* 284 Md. at 530, 397 A.2d 1385 (quoted in note 5) *with U.S. v. Sayers,* 698 F.2d 1128, 1130 (Fla.1983) ("Arrest" as used in the Speedy Trial Act refers to the point at which a defendant is charged.) Additionally, "arrest" is considered to imply considerably more than a "detention". *See People v. Superior Court of Los Angeles County,* 7 Cal.3d 186, 101 Cal.Rptr. 837, 496 P.2d 1205, 1215 (1972); *U.S. v. Morales,* 611 F.Supp. 242, 245 (D.C.N.Y.1985); *The American Heritage Dictionary* (1973); *The New American Webster* (1981).

In light of the evident ambiguity in the words of the agreement, we consider the circumstances of its formation, *Mascaro,* 250 Md. at 229, 243 A.2d 1, in order to effectuate the true intention of the parties (Michael Pantazes and the State), *Kasten Construction Co., Inc. v. Rod Enterprises, Inc.,* 268 Md. 318, 301 A.2d 12 (1973).[6]

On March 22, 1985, appellee, Michael Pantazes, petitioned the district court, under Art. 27 § 737, "to enter an Order for Expungement of all police and court records pertaining to the above arrest, detention, confinement and charges." Section 737 specifically informed Michael that in order to proceed with the petition he would be required to waive all claims "for tortious conduct arising from the *charge* " and not merely those arising from the "arrest, detention or confinement." Section 737, in conjunction with Md.Rule 4–504(b), explained that this general waiver could be accomplished by signing the "General Waiver and Release," Md. Rule Exp.Form 2 (1984), which is now before the Court. Therefore, in filing the release along with his § 737 petition Michael Pantazes clearly intended by that release to satisfy

---

6. Appellees draw the Court's attention to significant testimony in the record which indicates that, at the time Michael Pantazes signed the General Waiver and Release, he did not subjectively intend to release Dean Pantazes; however, the proper objective of the Court is to enforce the common understanding of the parties to the release, *Ford Motor Co. Ltd. v. M/S Maria Gorthon,* 397 F.Supp. 1332, 1335 (D.Md. 1975) and not one person's undisclosed intention, *Bernstein v. Kapneck,* 290 Md. 452, 460, 430 A.2d 602 (1981).

the § 737 requirement that he release "any person from tortious conduct arising from the *charge*" in general; which would include his claim for malicious prosecution. He did not intend, or did the State, to make an illusory promise to release everyone from a non-existent criminal "arrest."

■ We conclude, therefore, that the "occurrence which produced" the release *sub judice* was the string of circumstances beginning with the complaint to the police through the final dismissal of the charges. Since the appellant's acts which gave rise to the complaint for malicious prosecution *sub judice* were part of that occurrence, the release between the State and Michael Pantazes released that claim, *Pemrock*, 252 Md. 374, 249 A.2d 711, and the circuit court erred in denying the appellant's motion for summary judgment on that issue. We hold that the "General Waiver and Release," Md.Rules Form 4–503.2, when filed as part of a petition for expungement of records under Art. 27 § 737, releases all claims which may arise against any person by reason of his or her being investigated, arrested, detained or confined for, or charged with, a crime. It is not a condition precedent to the operation of the general release that the petitioner be subjected to confinement in jail or prison.

## B.

### *Defamation*

■ Having determined that the General Waiver and Release was a complete defense to the claim for malicious prosecution, we must now consider what effect that agreement has on the counts for defamation. We hold, for several reasons, that it has no effect whatever.

First, the "General Waiver and Release" waives "all claims which I may have for wrongful conduct *by reason of* my arrest, detention or confinement...." The claim for defamation, based on Dean Pantazes statements to Budget, however, does not arise "by reason of" the arrest, detention, or confinement. The circumstances which gave rise to

the claim for defamation preceded and exist wholly independently of the subsequent criminal charges. *Compare Krashes v. White*, 275 Md. 549, 554, 341 A.2d 798 (1975) (discusses the elements of malicious prosecution including the requirement that criminal proceedings be instituted by the defendant against the plaintiff) *with Mareck v. Johns Hopkins University*, 60 Md.App. 217, 223, 482 A.2d 17 (1984) (Elements of defamation include: defamatory statements, publication, and damages.). It follows that, by the controlling express terms of the release, *Bernstein v. Kapneck*, 290 Md. at 459, 430 A.2d 602; *Slice v. Carozza Prop., Inc.*, 215 Md. 357, 368, 137 A.2d 687 (1958), the agreement does not affect the claim for defamation.

Secondly, the defamation was the original tort while the malicious prosecution occurred subsequently. As this Court has held:

> [R]elease of an original tort-feasor discharges subsequent tort-feasors, ...[but] the converse ... [is] not true:
>
> > "[A] wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others. [But] it would defy reason to hold the [subsequent tort-feasor] liable for injuries caused by the original wrong doer, which were not the consequences of his own carelessness...." *Id.* [*Kyte v. McMillion*, 256 Md.] at 105–06, 259 A.2d 532, quoting *Derby v. Prewitt*, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 957–58, 187 N.E.2d 556, 560–61 (1962).

*Ralkey*, 63 Md.App. at 527, 492 A.2d 1358 (citing *Kyte v. McMillion*, 256 Md. 85, 105, 259 A.2d 532 (1969)). Therefore, the release of potential defendants to the malicious prosecution had no effect on the prior defamation. The judge did not err in denying appellant's motion for summary judgment on that count.

## II.

### Duplicitous Damages

Appellant next asks whether the verdict sheet created "a duplication of damages for the appellee."

Maryland Rule 8-131(a) provides that "[o]rdinarily, the appellate court will not decide any ...issue unless it plainly appears by the record to have been raised in or decided by the trial court ..." *See, e.g., Blum v. Blum,* 59 Md.App. 584, 477 A.2d 289 (1984); *Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61 (1983). There being no reference in the transcript to any objection regarding the verdict sheet, appellant has not properly preserved this issue.[7]

## Conclusion

█ The jury, by their special verdict sheet, awarded appellees: $750 for the defamation; which amount we affirm, and $26,000 for the malicious prosecution, which we reverse. As to the $15,000 awarded for loss of consortium, our task is more difficult because the jury did not attempt to apportion the damages between malicious prosecution and defamation.

The law provides that:

[I]n a proper case ...[the verdict] can be molded or reformed to reflect what the jury manifestly and beyond doubt intended, *Davis v. Board of Education,* 168 Md. 74, 78-79, 176 A. 878, 880 (1935); *Diamond State Co. v. Blake,* 105 Md. 570, 575-76, 66 A. 631, 633-34 (1907); *Gamble v. Sentman,* 68 Md. 71, 77, 11 A. 584, 585 (1887); *Browne v. Browne,* 22 Md. 103, 115 (1864), citing *Hawkins v. Crofton,* 2 Burrow 698, 699-700 (K.B.1758); 1 J. Poe, Pleading and Practice § 758, at 796 (5th ed. 1925), and cases cited in 2 J. Poe, § 758 n. 46, at 508 (6th ed. 1970)....

*Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 446, 340 A.2d 705 (1975) (some citations omitted, footnotes omit-

---

7. During oral argument, appellant's counsel referred to pages 270-274 of the transcript as a basis for preservation of this issue. The Court has reviewed this part of the transcript and finds no basis for appellant's claim. The only objection made was a general one that a special verdict sheet would give "credence and legitimization" to the suit which appellant described as "a bunch of baloncy." The issue on appeal, duplicitous damages, was not argued before the circuit court.

ted).  Since the jury did not apportion the damages awarded for the loss of consortium between the two torts, and because we have reversed the verdict for malicious prosecution, the damages awarded for loss of consortium must also be reversed.  This Court cannot possibly determine what part of the $15,000 the jury "manifestly and beyond a reasonable doubt intended" as compensation for the defamation count and what portion was improperly awarded for the malicious prosecution.

JUDGMENT AFFIRMED AS TO LIABILITY AND DAMAGES FOR DEFAMATION OTHER THAN THOSE DAMAGES AWARDED FOR LOSS OF CONSORTIUM; JUDGMENT REVERSED AS TO LIABILITY AND DAMAGES FOR MALICIOUS PROSECUTION; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A JURY TRIAL ON THE ISSUE OF DAMAGES AWARDABLE FOR LOSS OF CONSORTIUM.  COSTS TO BE PAID TWO–THIRDS BY APPELLANT AND ONE–THIRD BY APPELLEES.