FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporate instrumentality and agency of the United States, Appellee,

v.

Robert N. REEVES, Appellant,

and

Frank E. Williams, Jr.; Seymour S. Abensohn; E. Fulton Brylawski; W. Evans Buchanan; John C. Kelly; Glen J. Koepenick, Jr.; Robert K. Maddox; Harry H. Semmes, Jr.; Abe Pollin; Thomas J. O'Halloran, Jr.; Raymond L. Ellis, Jr.; Leolla L.J. Fisher; Michael L. Heup; Samuel J. Pierce; Walter L. Hagman; Richard A. Reed; Real Property Associates, Inc., a Maryland corporation; Lee Shoe; Arthur C. Older; Sharon A. Manuel O'Halloran, Defendants,

and

FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, the United States of America, and John Doe, one or more unknown agents of Federal Savings and Loan Insurance Corporation (FSLIC) and/or the Federal Home Loan Bank Board (FHLBB), Counterclaim Defendants,

v.

METROPOLITAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF BETHESDA and Hoye, Graves. Bailey & Associates, P.A., Third Party Defendants.

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION; a corporate instrumentality and agency of the United States, Appellee,

v.

Leolla L.J. FISHER, Appellant,

and

Frank E. Williams, Jr.; Robert N. Reeves; Seymour S. Abensohn; E. Fulton Brylawski; W. Evans Buchanan; John C. Kelly; Glen J. Koepenick, Jr.; Robert K. Maddox; Harry H. Semmes, Jr.; Abe Pollin; Thomas J. O'Halloran, Jr.; Raymond L. Ellis, Jr.; Michael L. Heup; Samuel J. Pierce; Walter L. Hagman; Richard A. Reed; Real Prop-

erty Associates, Inc., a Maryland corporation; Lee Shoe; Arthur C. Older; Sharon A. Manuel O'Halloran, Defendants,

and

FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, the United States of America, and John Doe, one or more unknown agents of Federal Savings and Loan Insurance Corporation (FSLIC) and/or the Federal Home Loan Bank Board (FHLBB), Counterclaim Defendants,

v.

METROPOLITAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF BETHESDA and Hoye, Graves, Bailey & Associates, P.A., Third Party Defendants.

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporate instrumentality and agency of the United States, Appellant,

v.

Robert N. REEVES; Leolla L.J. Fisher, Appellees,

and

Frank E. Williams, Jr.; Seymour S. Abensohn; E. Fulton Brylawski; W. Evans Buchanan; John C. Kelly; Glen J. Koepenick, Jr.; Robert K. Maddox; Harry H. Semmes, Jr.; Abe Pollin; Thomas J. O'Halloran, Jr.; Raymond L. Ellis, Jr.; Michael L. Heup; Samuel J. Pierce; Walter L. Hagman; Richard A. Reed; Real Property Associates, Inc., a Maryland corporation; Lee Shoe; Arthur C. Older; Sharon A. Manuel O'Halloran, Defendants,

and

FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, the United States of America and John Doe, one or more unknown agents of Federal Savings and Loan Insurance Corporation (FSLIC) and/or the Federal Home Loan Bank Board (FHLBB), Counterclaim Defendants,

v.

METROPOLITAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF

BETHESDA and Hoye, Graves, Bailey & Associates, P.A., Third Party Defendants.

Nos. 85–2340 to 85–2342.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1986.

Decided April 9, 1987.

Jacob A. Stein (John A. Pirko, Stein, Mitchell & Mezines, Washington, D.C., Leolla L.J. Fisher, on brief), for appellant.

Neil J. Dilloff, David H. Bamberger (Henry R. Lord, Jonathan D. Smith, M. Rosewin Sweeney, Piper & Marbury, Baltimore, Md., Ralph W. Christy, Deputy Gen. Counsel, William K. Black, Sr. Associate Gen. Counsel, Charlotte A. Reid, Trial Atty., Federal Home Loan Bank Bd., Washington, D.C., on brief); for appellee.

Before WINTER, Chief Judge, BUTZNER, Senior Circuit Judge, and

McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.

HARRISON L. WINTER, Chief Judge:

This suit was brought by the Federal Savings and Loan Insurance Corporation ("FSLIC") against former officers and directors of County Federal Savings & Loan Association ("County Federal"), a federally insured institution which, prior to suit, was merged into Metropolitan Federal Savings and Loan Association ("Metropolitan"). FSLIC sought damages for mismanagement of loans, fraud, breach of contract, and breach of fiduciary duties.

Early in the trial, various settlements were reached, including one for $1,320,000 with County Federal's outside directors. Trial proceeded against Robert Reeves (former President of County Federal), Leolla Fisher (former Vice President and head of the Construction Loan Department), Thomas O'Halloran (former Executive Vice President and head of the Loan Department), and Real Property Associates (a business owned by Fisher, O'Halloran and Michael Heup, a settling defendant).

The jury reached its verdict after a seven-week trial. Compensatory damages were assessed against Reeves ($4,300,000), Fisher ($1,000,000), O'Halloran ($4,502,500), and Real Property Associates ($500).[1] The judgments against O'Halloran & Real Property Associates were paid, while Reeves and Fisher unsuccessfully moved for judgment notwithstanding the verdict, or a new trial. Reeves and Fisher appeal, contending that FSLIC lacked standing to bring this suit, that continuance of the suit against them was barred by the release of the outside directors, that the jury verdict improperly apportioned damages and was insufficiently certain to support the judgments, and that the district court erred in implying a civil cause of action from vari-

---

1. The jury also assessed a total of $610,000 in punitive damages on the various causes of action against all three individual defendants. De-

fendants Reeves and Fisher raise no issue about the propriety of this award, but we conclude

ous federal criminal code provisions (Count I, as renumbered by the district court).[2]

We agree with the last of these arguments, and accordingly vacate the judgment on Count I.[3] However, we find no merit in the other errors claimed by defendants and therefore affirm the remainder of the judgment.

### I.

Defendants argue that FSLIC, as assignee of Metropolitan, lacks standing to pursue the claims at issue here. This argument misconceives both the nature of the assignment and the controlling legal principles.

In 1981, FSLIC helped to arrange the merger of County Federal (on the verge of default) with Metropolitan. The merger agreement provided that Metropolitan would acquire all of County Federal's assets, rights and liabilities, and was contingent upon execution of an agreement between Metropolitan and FSLIC. Under this latter agreement, FSLIC would indemnify Metropolitan for losses attributable to the merger, through the device of a "Special Reserve Account." In exchange, Metropolitan agreed to assign, upon request, "County Claims" to FSLIC, and to credit to the Special Reserve Account any recovery on County Claims. Such claims expressly included claims against former directors, officers, employees or agents of County Federal. On April 21, 1983 the County Claims were assigned and FSLIC then filed this suit.

Defendants contend that Metropolitan has no cause of action for losses suffered by County Federal prior to the merger, relying on *Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.,* 417

U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974). However, as the district court thoroughly explained, *Bangor Punta* is readily distinguishable.

In *Bangor Punta,* a corporation that purchased railroad stock at a depressed price was held to be equitably estopped from subsequently suing the former owners/sellers for mismanagement. The Court held that, since the stock price already reflected the harm due to pre-purchase mismanagement, plaintiff had suffered no injury and any additional recovery would constitute a windfall. *Id.* at 708, 94 S.Ct. at 2581. In this case, Metropolitan would neither suffer injury nor realize a windfall, but only because FSLIC agreed to indemnify Metropolitan for certain losses *in exchange for* Metropolitan's agreement, among other things, to assign County Claims to FSLIC, if requested. Assignment of the claims was part of the consideration for FSLIC's financial assistance, which was itself consideration for Metropolitan's participation in the merger. In addition, the agreement between Metropolitan and FSLIC provides that any recovery on County Claims go into the Special Reserve Account, thereby minimizing the financial assistance needed from FSLIC. "Thus," as the district court noted, "recovery by the plaintiff here is not the unexpected gain, windfall or unjust enrichment condemned by the Court in *Bangor Punta* [417 U.S. at 714–15, 94 S.Ct. at 2584–85]." 622 F.Supp. 132, 135 (D.Md.1985) *See also Mayers v. Moody,* 693 F.2d 1196 (5 Cir.1982), *cert. denied,* 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983) (similarly distinguishing *Bangor Punta* in securities fraud/breach of fiduciary duties case).

that it must be reduced because of our ruling in plaintiff's alleged implied cause of action.

**2.** FSLIC filed a cross-appeal, challenging the district court's refusal to submit claims to the jury for lost interest on County Federal loans. At oral argument, however, counsel for FSLIC conceded that it would not press the issue if a new trial is deemed otherwise unnecessary. Since that is our conclusion, we do not address the claims for lost interest.

**3.** Fisher was not found liable under Count 3. Reeves was found liable under Count 3, but the jury specified that the damages it assessed were duplicative of the damages in like amount assessed under Count 1. Both Reeves and Fisher were assessed punitive damages on Count 1, and these were not described as duplicated in Count 3. The effect of our decision is thus to reduce the judgment against Fisher by $800,000, compensatory damages, and $5,000, punitive damages, and against Reeves by $100,000, punitive damages.

The district court further correctly recognized that the nature of FSLIC's role in arranging and effectuating the merger rendered it an appropriate party to this litigation:

> [T]he FSLIC is not simply a private assignee of, or successor to, County Federal's claims. This is not a case involving the private acquisition of the stock or assets of a business enterprise on the open market for fair market value. Instead the transactions here are part of an agency supervised and subsidized merger undertaken to stabilize the savings and loan industry generally, as well as to salvage an insolvent member association in exchange for the right to pursue certain claims against those allegedly responsible, at least in part, for the institution's precarious financial position.... As regulator and supervisor, the FSLIC has been an indispensable party throughout the merger and stabilization process. Metropolitan has simply been a vehicle through which the FSLIC has attempted to maintain and insure the efficient utilization of County Federal's assets. Therefore, the Court will not take a formalistic view of County Federal's merger with Metropolitan as a single and discrete private acquisition for fair market value. The FSLIC's subsidization and supervision of the merger qualifies the FSLIC as a party to the acquisition for the purpose of resolving the issue of the applicability of the *Bangor Punta* holding in this case.

622 F.Supp. at 134.

## II.

◼ Early in the course of the trial, FSLIC reached a settlement with the outside directors of County Federal. Only Count IX (negligence) of the amended complaint was the subject of the resulting consent judgment entered against the outside directors; the remaining claims against *them* were dismissed with prejudice. It is apparent, however, that this settlement was intended to cover only those defendants named. There was no broad language providing a general release of all possible FSLIC claims; rather, the agreement explicitly addressed itself only to the claims available against the outside directors. This case is thus quite unlike *Peters v. Butler*, 253 Md. 7, 251 A.2d 600 (1969) ("a general release to all mankind bar[s] further suits against other entities involved in the occurrence which produced the settlement"), and *Ralkey v. Minnesota Mining & Mfg. Co.*, 63 Md.App. 515, 492 A.2d 1358 (1985). Indeed, paragraph 7 of the settlement agreement, which requires the outside directors to cooperate in FSLIC's continuing litigation against the remaining defendants, clearly indicates that the consent judgment was not intended to release those, including Reeves and Fisher, who were not parties to the settlement. Accordingly, we cannot construe the judgment entered against the outside directors to bar the judgments obtained through trial of Reeves and Fisher. *See Bernstein v. Kapneck*, 290 Md. 452, 430 A.2d 602 (1981) and *Ralkey*, 492 A.2d 1358 (releases are governed by general rules of contract interpretation; where scope of release is manifested by unambiguous language, words used will be given their ordinary meaning). *Cf. Pemrock, Inc. v. Essco, Co.*, 252 Md. 374, 249 A.2d 711 (1969) (release which, "in literal, plain, unambiguous words acquitted and discharged forever not only New Castle, but all other persons, firms, corporations [etc.]" would be held to bar *any* further litigation).[4]

## III.

### The Jury Verdict

A. The district court's instructions regarding damages

Defendants argue that the jury instructions regarding the assessment of damages were so confusing that it is impossible to

---

4. FSLIC urges that we apply, as federal common law, the "modern rule" that "[a] valid release of one tortfeasor ... does not discharge others liable for the same harm, unless it is agreed that it will discharge them." Rest. (2d) Torts, § 885(1). However, because we conclude that application of this ostensible federal common law would not produce a different result, we need not decide which law is controlling in this context.

interpret the resulting verdict. It is true that the first two versions of the damage instructions were hardly a model of clarity. Moreover, there is no doubt that the instructions, altered twice in response to questions from the jury, fail to convey a consistent message. Nevertheless, in the particular circumstances of this case, we believe that the resulting verdict adequately supports the judgments rendered.

■ The jury's first question for the court—"If we have agreed on a total damage figure per person, do we have to list dollar totals under each count beside each person ..."—demonstrates that, from the beginning, the jury wanted to apportion damages. The judge "clarified" his instructions and told the jury to list "just one damage figure [per] count. You don't put down for each name...." Yet the jury persisted in its desire to apportion damages, asking: "Since we are now to set one sum for each count that we find for the plaintiff—if we feel then [sic] any one or more of the defendants should bare [sic] more of the burden of blame than any of the others, is there no way to make this known." This note indicates that the jury understood the judge's instruction not to apportion damages, but was unhappy with that restriction. When the judge responded to this note by permitting the jury to apportion damages, the jury returned its verdict within the space of an hour. The jury had a clear idea from the start as to how it thought damages should be assessed, and it consistently pursued that idea.

■ Although defendants claim that the verdict returned by the jury was itself ambiguous, we perceive no problem. A damage figure was assessed for each defendant on each count for which he or she was found liable. The total damages (ignoring those which were specifically labelled by the jury as "duplicate") are $9,803,000—the same figure listed on the bottom of the

verdict as the "damage total." Defendants' alternate possible interpretations of the verdict are both implausible and unsupported in the record. The district judge apparently had no difficulty entering a judgment order, based on that verdict, which conforms with plaintiff's interpretation. Indeed, defendants' initial brief in this appeal described the damage award, in the statement of facts, in precisely the same way.

### B. The jury's apportionment of damages

Defendants' final assertions of error—that it was improper to allow the jury to apportion damages, and that satisfaction of the judgment entered against O'Halloran should bar collection of the damage awards assessed against Reeves and Fisher—both turn on the assumption that this was necessarily a case of joint and several liability. We reject that assumption.

■ Defendants correctly note that "[w]hen payment of the judgment in full is made by the judgment debtor, there is no doubt that the plaintiff is barred from a further action against another who is liable for the same damages...." (quoting Prosser & Keeton, The Law of Torts, § 48 (5th ed. 1984)). Most of defendants' cases apparently deal with this situation. However, there are two preconditions to the litigation bar just described: (1) liability for the same damages, and (2) full satisfaction of the judgment. When either of these preconditions is not met, further litigation will not be precluded. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 n. 8, 99 S.Ct. 2753, 2756 n. 8, 61 L.Ed.2d 521 (1979). FSLIC focuses on these preconditions.[5]

#### (1) Liability for the same damages

■ When damages against multiple tortfeasors are apportioned, rather than as-

---

5. Although plaintiff and defendants claim to dispute the prevailing legal standard, in reality they are debating about two sides of the same coin. There is no indication that Maryland law on this point differs from the basic common law rules, to which both parties refer. (Indeed, defendants make several references to the applicable rules as "universal" or "pervasive.") There is thus no reason for us to determine the appropriateness of applying (or creating) federal common law in this context.

sessed in a lump sum for which all are jointly and severally liable, recovery against one or more will not bar recovery against the others. *See* Rest. (2d) Judgments, § 50 Comment c (1982); Rest. (2d) Torts, §§ 881, 885 Comment a (1979). Apportionment is proper when "two or more persons, acting independently, tortiously cause distinct harms *or* a single harm for which there is a reasonable basis for division according to the contribution of each...." Rest. (2d) Torts, § 881 (emphasis added). *Accord* Rest. (2d) Torts, § 433A (1965); Speiser, Krause & Gans, 1 The American Law of Torts, § 3:12 (1983). *See Huff v. Harbaugh,* 49 Md.App. 661, 435 A.2d 108 (1981) (focus is to avoid double recovery for same injury). "The question is primarily not one of the fact of causation, but of the feasibility and practical convenience of splitting up the total harm into separate parts.... Where a factual basis can be found for some rough practical apportionment, ... it is likely that the apportionment will be made." Prosser & Keeton, § 52. This is true even where the harm is not divisible, but there is a "reasonable and rational basis [for making a] fair apportionment among the causes responsible." Rest. (2d) Torts, § 433A Comment d, § 881. *See also* Speiser, et al., § 3:12 ("even where a single and seemingly indivisible harm or injury has resulted, apportionment will be sanctioned if it is reasonably possible between or among tortfeasors whose combined tortious activity has caused the harm").

The jury in this case, as is evident from the verdict, found it possible to apportion damages among the defendants. Despite repeated instructions to assign damages for each count, *without* a breakdown for each defendant, the jury's written questions to the court indicate its firm desire to assess different amounts against the three defendants. The district judge recognized as much, and when he finally told the jury that it could apportion damages based on the "relative culpability" of the defendants, the jury returned with its verdict within an hour's time.

Plaintiff points to ample evidence in the record which demonstrates the differing roles and responsibilities of the defendants in the management of County Federal.[6] Defendant Fisher's contribution occurred during a different time-frame from the others—a factor which itself justifies an apportionment of damages. *See* Rest. (2d) Torts, § 433A Comment c. At times during the trial, the defense attorneys admitted (and Fisher's attorney affirmatively argued), that joint and several liability was inappropriate. Indeed, defendants in their brief concede (under the mistaken belief that apportionment is only warranted where there are distinct injuries) that the jury had a reasonable basis for finding "different levels of culpability for the harm done."

◼ Since the determination of whether the facts supported an apportionment of damages "was one upon which reasonable men could differ," it was properly left to the jury. *Nationwide Mutual Insurance Co. v. McLaughlin,* 429 F.2d 1317, 1317 (4 Cir.1970). The issue of apportionment, in particular, is one on which juries are typically given wide latitude. Speiser, *et al.,* § 3:12 ("apportionment will be sanctioned if it is reasonably possible"; "[i]n some instances of this kind where the extent of the harm or damage inflicted by the sepa-

---

**6.** For example, the evidence indicated that Reeves, who was both President and a director of County Federal, had responsibility for day-to-day management of the institution. He served on every committee of County Federal's board, and was involved in the approval of almost every construction loan. Reeves was responsible for personnel and salary decisions, as well as many of County Federal's high-risk loan policies. He also apparently engaged in a deliberate effort to conceal the growing problems from the other directors.

O'Halloran's role, as Executive V.P. and head of the Loan Department, was also significant. The evidence shows, for example, that he signed false inspection certifications and, during one period, placed over $500,000 in loans on the books, based solely on his approval.

Fisher's responsibility was limited more to the Construction Loan Department of County Federal, and included making loan recommendations, authorizing disbursement of loan proceeds for work not yet performed, and falsely representing the status of delinquent loan payments.

rate acts is seemingly incapable of any definite proof or ascertainment by evidence, the apportionment has been left to the fact triers nevertheless"). *See also Huff v. Harbaugh* (whether defendants are responsible for the "same" injuries, and are thus joint tortfeasors, is a question of fact). The jury here clearly perceived some basis for differentiating the liability of the three defendants.[7] We see no compelling reason to disturb that assessment.[8]

**(2) Full satisfaction of the judgment**

■ Defendants Reeves and Fisher claim that they should be relieved of any liability because of the judgment already entered against defendant O'Halloran. However, since the damages were appropriately apportioned among Reeves, Fisher and O'Halloran, there is no reason why O'Halloran's payment of the amount he owed should have any bearing on the damages due from Reeves and Fisher. The fact that O'Halloran's obligation was marked "paid, settled and satisfied," relates only to that portion of the judgment and damages for which he was deemed individually responsible.

To the extent that defendants are really complaining about the fact of apportionment, they concede a lack of standing. *See also Ohio Valley Bank v. Greenebaum Sons Bank & Trust Co.,* 11 F.2d 87 (4 Cir.1926) (even if apportionment is error, defendants have no right to complain when subjected to lower damages than would result from joint and several liability); 46 ALR 3d 801, 808, 843–44 (1972).

Finally, even if liability was considered joint and several, defendants would be released only if plaintiff had received full satisfaction of its claims; partial satisfaction would merely reduce the total for which the remaining defendants are responsible. *See* Prosser & Keeton, § 48; Rest. (2d) Torts, §§ 885–86, and Comments thereto; Rest. (2d) Judgments, § 50 and Comments. Defendants' claim that payment of a lesser judgment will extinguish a greater one applies only where the court adjudges that lesser amount to constitute full satisfaction (Prosser & Keeton, § 48; Rest. (2d) Torts, § 886 (appendix)), or where the parties so agree (*Grantham v. Bd. of County Commissioners for Prince George's County,* 251 Md. 28, 246 A.2d 548 (1968)).

**IV.**

Count I, as submitted to the jury, sought damages for violations of 18 U.S.C. §§ 657, 1001, 1006, 1008 and 1014, which deal with embezzlement, fraud and misrepresentation.[9] Defendants claim that there is no basis for implying a civil cause of action from these federal criminal code provisions. We agree.

■ FSLIC claims that defendants failed to preserve this issue for appeal. It is generally true that defendants' failure to raise an issue in a motion for directed verdict will preclude its assertion in a motion for judgment notwithstanding the verdict. Wright & Miller, 9 Federal Practice & Procedure, § 2537; *Benson v. Allphin,* 786 F.2d 268, 273 (7 Cir.), *cert. denied,* —

7. In his Memorandum Opinion denying defendants' motions for judgment n.o.v. or a new trial, the district judge concluded that "the evidence in this case permitted the jury reasonably to find that the injury to County Federal was divisible and to apportion damages accordingly. The evidence would also permit a finding that the directors and these defendants were liable for different losses or only part of the same loss."

8. Defendants argue that plaintiff cannot now seek apportioned damages since plaintiff originally presented the case as one of joint and several liability. However, the device of joint and several liability was designed to benefit plaintiffs, by facilitating recovery of damage

awards. Dooley, 1 Modern Tort Law—Liability & Litigation, § 18.00 (1982); 46 ALR 3d 801 (1972). The fact that the jury rejected plaintiff's invocation of this device should not bar plaintiff from recovering damages in the form deemed appropriate by the jury.

9. To the extent pertinent here, § 657 renders criminal embezzlement from a savings and loan corporation insured by FSLIC; § 1001 deals with fraud and concealment from a government agency with respect to a matter within its jurisdiction; §§ 1006 and 1008 deal with false entries and false statements to defraud FSLIC or to induce it to insure accounts; and § 1014 deals with false statements to influence FSLIC's actions in financial matters.

U.S. ——, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986). *See* F.R.Civ.P. 50(a). However, rigid application of this rule is inappropriate, in a case like this, where such application serves neither of the rule's rationales—protecting the Seventh Amendment right to trial by jury, and ensuring that the opposing party has enough notice of the alleged error to permit an attempt to cure it before resting. *See Benson,* 786 F.2d at 273. The propriety of implying a civil cause of action from federal criminal statutes would not have been submitted to the jury, even if raised in time to do so. Moreover, plaintiff had adequate notice of this challenge from defendants' answers to the complaint and amended complaint, and there is no suggestion that plaintiff could have produced any additional evidence that would have been pertinent to this legal issue. We will not be forced to recognize a cause of action because of a procedural error which did not prejudice the plaintiff. *Accord Benson,* 786 F.2d 268 (failure to move for directed verdict did not bar motion for judgment n.o.v. where basis for motion was a legal issue, not for the jury, and where plaintiff's ability to respond was not prejudiced).

To determine the propriety of implying a cause of action from federal statutes, "our focus must be on the intent of Congress when it enacted the statutes...." *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 536, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984). *Accord California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Home Health Services, Inc. v. Currie,* 531 F.Supp. 476 (D.S.C.1982), *aff'd* 706 F.2d 497 (4 Cir.1983). In this case, there is no evidence of congressional intent to create such a civil remedy. The district court's legislative history citations refer to the 1956 amendments, whose sole purpose was to extend the legislation's coverage to statechartered institutions. The Senate Report and other statements included in the legislative history make no mention of possible civil remedies; indeed, they focus on the value of expanding the statute's *criminal* sanctions. *See* S.Rep.No. 2730, 1956 U.S. Code Cong. & Admin. News 3662–65. Moreover, the Senate Report specifically describes the U.S. Code sections as "provid[ing] criminal penalties." *Id.* at 3662. Although a civil remedy would aid in reducing losses caused by fraud, etc., it seems clear that Congress envisioned the statute solely in criminal terms.

 Unfortunately, the cases cited by both parties (and the district court) provide little analytical assistance.[10] Thus, while an implied civil cause of action does not seem inconsistent with the congressional scheme, there is no affirmative indication that Congress intended to furnish civil remedies. "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Sierra Club,* 451 U.S. at 297, 101 S.Ct. at 1781. We have previously indicated our reluctance to imply private causes of action from federal legislation, and this is not a promising case for deviation from that pattern. *See Flowers v. Tandy Corp.,* 773 F.2d 585, 589 (4 Cir.1985) ("implied causes of action are disfavored and should be found only where a statute clearly indicates that the plaintiff is one of a class for whose benefit the statute was enacted and there is some indication that Congress intended such a cause of action to lie"); *Currie,* 531 F.Supp. at 479. Thus, the $805,000 award against Fisher under Count I (not duplicated in Count III) must be reversed.[11] The award against Reeves under Count 1 also requires reversal; since the compensatory award against Reeves

---

10. The Seventh Circuit decisions that ostensibly support implication of civil remedies (*FSLIC v. Krueger,* 435 F.2d 633 (7 Cir.1970), and *Katin v. Apollo Savings,* 460 F.2d 422 (7 Cir.1971), *cert. denied* 406 U.S. 918, 92 S.Ct. 1767, 32 L.Ed.2d 117 (1972)), did not address this issue directly. They merely noted, without explanation or discussion, that the plaintiffs were alleging violations of the "standards of conduct" established by the criminal statutes.

11. As we earlier observed (note 1, *supra*), defendants have not appealed the punitive damage assessments. However, we cannot invalidate the cause of action under Count I, and the accompanying compensatory awards, without similarly invalidating the punitive damages assessed under Count I which were not duplicative of any other damages.

was duplicated under Count III, only the $100,000 in punitive damages (not labelled by the jury as duplicative with the Count III punitive award) must be eliminated.

## V.

To summarize, we affirm the judgments entered against Reeves and Fisher, with the exception of the judgments entered on Count I (implied civil remedy from federal criminal statutes). The judgment against Fisher is consequently reduced by $805,-000. The judgment against Reeves for compensatory damages remains unchanged since his Count 1 damages were found by the jury to be duplicated under Count III (which we affirm), but the judgment for punitive damages is reduced by $100,000.

AFFIRMED IN PART; REVERSED IN PART; COSTS TO BE PAID BY DEFENDANTS.